PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

RICARDO A. PRUDENCIO,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney General,

*Respondent.*

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

IMMIGRANT DEFENSE PROJECT; NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD; IMMIGRANT LEGAL RESOURCE CENTER; KATHRYN O. GREENBERG IMMIGRATION JUSTICE CLINIC OF THE BENJAMIN N. CARDOZO SCHOOL OF LAW,

*Amici Supporting Petitioner.*

No. 10-2382

On Petition for Review of an
Order of the Board of Immigration Appeals.

Argued: September 21, 2011

Decided: January 30, 2012

Before TRAXLER, Chief Judge, and SHEDD and
KEENAN, Circuit Judges.

Petition granted; vacated and final judgment by published opinion. Judge Keenan wrote the opinion, in which Chief Judge Traxler joined. Judge Shedd wrote a dissenting opinion.

---

**COUNSEL**

**ARGUED:** Hilario Mercado, Jr., MERCADO LAW FIRM, PLC, Falls Church, Virginia, for Petitioner. Jesse Matthew Bless, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Tony West, Assistant Attorney General, Civil Division, Jennifer Paisner-Williams, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Peter L. Markowitz, BEN-JAMIN N. CARDOZO SCHOOL OF LAW, New York, New York, for Amici Supporting Petitioner.

---

**OPINION**

BARBARA MILANO KEENAN, Circuit Judge:

Ricardo A. Prudencio is a native and citizen of El Salvador who has been granted lawful permanent resident alien status in the United States. He petitions this Court for review of a decision of the Board of Immigration Appeals (the Board), in which the Board dismissed his appeal from an immigration judge's decision classifying him as an alien subject to removal under section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(i).

The order of removal was based on the immigration judge's determination that Prudencio previously had been convicted of a crime involving moral turpitude. In making this determination, the immigration judge considered information obtained using the three-step procedural framework estab-

lished by the Attorney General in *Matter of Silva-Trevino*, 24 I&N Dec. 687 (A.G. 2008). Because we conclude that the moral turpitude provisions of the INA are not ambiguous and do not contain any gap requiring agency clarification, we hold that the procedural framework established in *Silva-Trevino* was not an authorized exercise of the Attorney General's authority under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). Accordingly, we grant Prudencio's petition and vacate the Board's decision and the order providing for Prudencio's removal.

## I.

Before the decision in *Silva-Trevino*, the majority of our sister circuits applied the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), in determining whether an alien's prior conviction qualified as a crime involving moral turpitude under the INA. The Attorney General purported to alter application of these traditional approaches in *Silva-Trevino*. Primarily, the Attorney General concluded that if, after application of the categorical and modified categorical approaches, an alien's record of conviction still is inconclusive, immigration judges should engage in an additional third step of analysis and "consider any additional evidence the adjudicator determines is necessary or appropriate" to resolve whether the alien was convicted of a crime involving moral turpitude. 24 I&N Dec. at 704.

## II.

Prudencio was accorded lawful permanent resident alien status in September 2005. In October 2009, he was charged in Prince William County, Virginia, with a violation of Virginia Code § 18.2-63 for the carnal knowledge, without the use of force, of a 13-year-old child (the carnal knowledge statute). In March 2010, in the Prince William County Juvenile and Domestic Relations District Court, Prudencio pleaded

guilty to the amended charge of contributing to the delinquency of a minor (the 2010 conviction), in violation of Virginia Code § 18.2-371 (the delinquency statute), a misdemeanor. He received a sentence of 12 months' incarceration with six months suspended.

In June 2010, the Department of Homeland Security (DHS) initiated removal proceedings against Prudencio under 8 U.S.C. § 1227(a)(2)(A)(i).[1] DHS argued that Prudencio was subject to removal because, within five years of his admission into the United States, he had been convicted of a crime involving moral turpitude for which a sentence of one year or longer could have been imposed. DHS based its action on Prudencio's conviction under the delinquency statute, which provides in relevant part:

> Any person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228, or (ii) engages in consensual sexual intercourse with a child 15 or older not his spouse, child, or grandchild, shall be guilty of a Class 1 misdemeanor.

Va. Code § 18.2-371.

In considering DHS's request for removal, the immigration judge used the three-step procedural framework established by the Attorney General in *Silva-Trevino*. Under this procedural framework, the immigration judge first applied the cate-

---

[1]DHS asserted two other bases for removal, which DHS later withdrew. Additionally, DHS charged Prudencio with a violation of section 237(a)(2)(E)(i) of the INA, which the immigration judge declined to address. However, the alleged violation of section 237(a)(2)(E)(i) is not before us, because DHS has not filed a cross-appeal.

gorical approach approved in *Taylor* and *Shepard* to determine if every conviction under the delinquency statute inherently involved moral turpitude. Because he concluded that the statute was divisible, encompassing some crimes that involve moral turpitude and others that do not, the immigration judge proceeded to the second step of the *Silva-Trevino* framework, under which he applied the modified categorical approach articulated in *Taylor* and *Shepard* and reviewed Prudencio's record of conviction. Upon determining that the record of conviction was inconclusive, the immigration judge proceeded to apply the third step of the *Silva-Trevino* procedural framework.

Pursuant to this third step, when the record of conviction does not establish conclusively under which portion of a divisible statute an alien was convicted, the Attorney General has authorized immigration judges to consider evidence beyond the record of conviction to the extent they deem it "necessary and appropriate."[2] *Silva-Trevino*, 24 I&N Dec. at 690. Applying this third step in the present case, the immigration judge reviewed the narrative report prepared by the Prince William County Police Department relating to the 2010 conviction, which indicated that Prudencio had sexual relations with a 13-year-old girl when he was over the age of 18. Based on this information, the immigration judge sustained the removal charge and ordered that Prudencio be removed to El Salvador.

Prudencio appealed the order of removability to the Board, advancing two main arguments. First, he challenged the procedural framework established in *Silva-Trevino*, asserting that the framework was predicated on an impermissible reading of

---

[2]The Attorney General used the phrase "necessary *and* appropriate" twice in outlining his procedural framework. *Silva-Trevino*, 24 I&N Dec. at 690, 699 (emphasis added). However, in summarizing the framework twice and in employing it in the case itself, he used the phrase "necessary *or* appropriate." *Id.* at 687, 704, 708 (emphasis added).

the INA. Second, he contended that the documents reviewed by the immigration judge under the third step of the *Silva-Trevino* framework conclusively established that Prudencio was convicted under subsection (i) of the delinquency statute, which does not encompass crimes involving moral turpitude.

Prudencio argued that only a conviction under subsection (ii) of the delinquency statute, involving consensual sexual intercourse with a child 15 or older, qualified as a crime involving moral turpitude. Because the documents considered by the immigration judge showed that the victim was not 15 years of age or older, Prudencio asserted that he could not have been convicted under subsection (ii) of the delinquency statute and, therefore, must have been convicted under subsection (i) of that statute.

The Board rejected Prudencio's arguments and dismissed his appeal. In reaching its decision, the Board upheld the immigration judge's application of the three-step procedural framework established in *Silva-Trevino*. The Board further concluded that Prudencio did "not dispute the immigration judge's findings of fact," and that Prudencio had acknowledged that his initial charge under the carnal knowledge statute was based on a sexual encounter with a female minor.

III.

A.

Prudencio argues on appeal that we should not defer to the *Silva-Trevino* procedural framework, but instead should limit our review to the categorical and modified categorical approaches in determining whether he was convicted of a crime involving moral turpitude. Prudencio contends that under either of these approaches, his conviction cannot be classified as a crime involving moral turpitude.

Because the *Silva-Trevino* procedural framework is central to the resolution of this appeal, we begin our analysis with a

review of that case. Cristoval Silva-Trevino was a native of Mexico admitted to the United States as a lawful permanent resident. *Silva-Trevino*, 24 I&N Dec. at 690. In 2004, he entered a plea of "no contest" in a Texas state court to the felony offense of "indecency with a child," in violation of Texas Penal Code § 21.11(a)(1). *Silva-Trevino*, 24 I&N Dec. at 690. That statute prohibits, among other things, sexual contact with a child younger than 17 years of age by a person at least three years older who is not married to the child. Tex. Penal Code Ann. § 21.11(a)(1).

Arguing that Silva-Trevino had been convicted of an aggravated felony, DHS began removal proceedings against him the following year under 8 U.S.C. § 1227(a)(2)(A)(iii). *Silva-Trevino*, 24 I&N Dec. at 691. The immigration court determined that Silva-Trevino's conviction was categorically a crime involving moral turpitude, rendering him ineligible for adjustment of status. *Id.* Therefore, the immigration court ordered his removal from the United States. *Id.*

The Board reversed the immigration court's decision, concluding that under both the categorical and the modified categorical approaches, DHS had failed to establish that Silva-Trevino's conviction qualified as a crime involving moral turpitude. *Id.* at 692. Although DHS did not appeal the Board's decision, the Attorney General directed that the Board refer the case to him under 8 C.F.R. § 1003.1(h)(1)(i). The Attorney General stated that the case presented him with "an opportunity to establish a uniform framework for ensuring that the [INA]'s moral turpitude provisions are fairly and accurately applied." *Silva-Trevino*, 24 I&N Dec. at 688.

In his decision in *Silva-Trevino*, the Attorney General established a three-step procedural framework for determining whether an alien's conviction qualifies under the INA as a crime involving moral turpitude. *Id.* at 704. In support of his analysis, the Attorney General observed that the various circuit courts of appeal have applied different standards in their

categorical and modified categorical analyses. *Id.* at 693-94. Invoking section 103(a)(1) of the INA and 8 C.F.R. § 1003.1(d)(1), the Attorney General purported to establish a uniform framework for use throughout the nation for determining whether an alien's conviction qualifies as a crime involving moral turpitude. *Id.* at 695-96. His stated basis for this action was his contention that the relevant sections of the INA are ambiguous, and that "administrative agencies are not bound by prior judicial interpretations of ambiguous statutory provisions." *Id.* at 696 (citing *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005)).

The three-step procedural framework established by the Attorney General in *Silva-Trevino* starts with a categorical approach, under which the inquiry is terminated if the statute at issue categorically either requires or excludes conduct involving moral turpitude. The Attorney General stated that if, however, there is a "realistic probability" that the statute could be applied to encompass conduct that does not involve moral turpitude, as well as conduct that does, the inquiry must continue to a second step of analysis. *Id.* at 697 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

The second step described in *Silva-Trevino* is the modified categorical approach approved by the Supreme Court in *Taylor* and *Shepard*. At this stage in the analysis, the immigration judge reviews the record of conviction to determine whether the alien's conviction qualifies under the statute as a crime involving moral turpitude. *Silva-Trevino*, I&N Dec. at 698-99. If the documents subject to review do not conclusively resolve the inquiry, the Attorney General directed that immigration judges should proceed to a third step. *Id.* at 699. It is the addition of this third step that deviates most significantly from the categorical and modified categorical approaches applied in this circuit and in the majority of our sister circuits.

Under the third step of the *Silva-Trevino* procedural framework, the Attorney General authorized immigration judges to

consider evidence beyond the record of conviction "if doing so is necessary and appropriate." *Id.* The Attorney General did not provide any guidance on the kind of evidence that may be considered under this third step, stating only that the immigration judge may "consider any additional evidence or fact finding" that the judge "determines is necessary or appropriate to resolve accurately the moral turpitude question." *Id.* at 708.

## B.

The Attorney General has based his decision to establish this three-step procedural framework on his determination that the use of the phrase "moral turpitude" in the INA is ambiguous. The text of the statute on which the Attorney General relies provides, in relevant part, that "any alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I) (the moral turpitude statute).[3]

The Attorney General opined that the statute is "silent on the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude." *Silva-Trevino*, 24 I&N Dec. at 693. He concluded that "[t]o the extent [the statute] does suggest a method, the text actually cuts in different directions." *Id.* According to the Attorney General, certain language, such as the use of the word "convicted" rather than "committed" at the beginning of the statute, suggests that the inquiry should be categorical and should focus on the statutory elements required for conviction, rather than on the particular facts of an individual crime. *Id.* He asserted that other language, how-

---

[3]Both this case and *Silva-Trevino* involve 8 U.S.C. § 1227(a)(2)(A)(i), which employs the phrase "crime involving moral turpitude." However, a greater understanding of that phrase comes from its use in 8 U.S.C. § 1182(a)(2)(A)(i)(I). Accordingly, we will conduct our analysis based on this latter statute, as the Attorney General does in *Silva-Trevino*.

ever, "seems to call for, or at least allow, inquiry into the particularized facts of the crime." *Id.* In support of this latter proposition, the Attorney General identified two statutory references: (1) the use of the word "involving," and (2) the language regarding aliens who admit to "committing" certain "acts." *Id.* We disagree with the Attorney General's interpretation.

IV.

In reviewing the Attorney General's analysis and the procedural framework established in *Silva-Trevino*, we first consider Prudencio's argument challenging the basis for the Attorney General's invocation of his authority. Because Prudencio opposes an agency determination reached through adjudication, we employ the analysis prescribed by the Supreme Court in *Chevron*. 467 U.S. 837.

Under the *Chevron* analysis, we first consider whether "Congress has directly spoken to the precise question" at issue. *Id.* at 842. If, using traditional tools of statutory construction, we determine that Congress manifested an intention on the precise question, such intention must be given effect and the analysis concludes. *Id.* at 842-43 n.9. When, however, the statute is ambiguous or silent with respect to the precise issue, we must proceed to decide whether the agency's interpretation of the statute is reasonable and, thus, is entitled to deference. *Id.* at 843.

We previously have accorded substantial deference to DHS's interpretation of the statutes and regulations that the agency administers. *Yousefi v. U.S. INS*, 260 F.3d 318, 325 (4th Cir. 2001) (per curiam). In *Yousefi*, we held that the *Chevron* framework provides the appropriate method for analyzing DHS's determination regarding what type of conduct involves moral turpitude under the INA. *Id.* at 326. We observed that deference was appropriate in that circumstance because Congress did not define the phrase "crime involving

moral turpitude," instead "leaving the phrase to administrative and judicial interpretation." *Id.* at 326.

We face a different question in this appeal. At issue in this case is not what conduct or statutory offense qualifies as a crime involving moral turpitude, but rather what language in the moral turpitude statute informs an adjudicator of the procedure for determining whether a particular conviction qualifies as a crime involving moral turpitude. In part of its argument, DHS conflates these concepts and relies on the asserted ambiguity inherent in the phrase "crime involving moral turpitude" to justify deference to the Attorney General's three-step procedural framework.

These two concepts, however, require distinct inquiries. In answering the question before us, whether the moral turpitude statute provides direction concerning the process for determining whether a particular conviction qualifies as a crime involving moral turpitude, we are guided by the *Chevron* analysis.

## A.

Under the *Chevron* analysis, we consider the language of the moral turpitude statute to resolve whether the statutory language is ambiguous or silent regarding the appropriate procedure for determining whether a particular conviction involves moral turpitude. *See Chevron*, 467 U.S. at 843. In making this assessment, we consider the statute's plain language. *Id.* at 843 n.9.

The moral turpitude statute provides, in material part, that:

> Except as provided in clause (ii), any alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of—

> (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . .

is inadmissible.

8 U.S.C. § 1182(a)(2)(A)(i)(I).

This language in the moral turpitude statute includes three distinct provisions that are relevant here. First, under the statute, any alien who is convicted of a crime involving moral turpitude is inadmissible. Second, the statute precludes the admission of any alien who has admitted having committed a crime involving moral turpitude. Third, the statute bars admission of any alien who has admitted committing acts that satisfy the essential elements of a crime involving moral turpitude.

These three provisions fall into two separate categories, namely, a category involving convictions and a category involving admissions. The statutory language addressing convictions is found exclusively in the first part of the moral turpitude statute. This first portion of the statute is the one at issue in this case, and was central to the decision in *Silva-Trevino*.

In contrast, the statutory category referring to admissions is found in the second and third provisions of the statute, and addresses only acts that an alien has admitted committing. The language regarding "committing acts," relied on by the Attorney General, only appears within this portion of the statute addressing admissions, and not the part of the statute addressing convictions. Because there are no admissions at issue in the present case, and likewise were none at issue in *Silva-Trevino*, the Attorney General's reliance on the words "committing acts" in support of his finding of statutory ambiguity is misplaced.

We also disagree with the Attorney General's analysis of the word "involving." In *Silva-Trevino*, the Attorney General interpreted the word in isolation, relying on the dissent in *Marciano v. INS*, which unsuccessfully argued that adjudicators should determine whether "moral turpitude was in fact *involved*" in reviewing prior convictions. *Silva-Trevino*, 24 I&N Dec. at 693 (quoting *Marciano v. INS*, 450 F.2d 1022, 1028 (8th Cir. 1971) (Eisele, J., dissenting)) (emphasis added). The Attorney General asserted that, viewed in this context, the word "involving" allows for an inquiry into the particular facts underlying a conviction. *See Silva-Trevino*, 24 I&N Dec. at 693. However, both the context in which this word is used and the structure of the statute refute the Attorney General's interpretation.

The word "involving" must be considered in its statutory context. As set forth in the statute, the participle "involving" cannot be divorced from the unitary phrase "crime involving moral turpitude," which is a term of art that has been used for over one hundred years and predates the INA. *See Jean-Louis v. Attorney General*, 582 F.3d 462, 477 (3d Cir. 2009) (citing *Jordan v. De George*, 341 U.S. 223, 227 (1951) and *Baxter v. Mohr*, 37 Misc. 833, 76 N.Y.S. 982 (1902)). As the Third Circuit noted in *Jean-Louis*, the use of the term "involving" in the phrase "crime involving moral turpitude" is no more expansive than use of the word "of" in the term "crime of violence." *Id.* at 478.

This unitary understanding of the phrase "crime involving moral turpitude" is supported by another part of the moral turpitude statute. While the third provision in the statute referring to admissions is not directly applicable to the resolution of this case, its construction illuminates the cohesive nature of the phrase "crime involving moral turpitude." That provision states that "any alien . . . who admits committing acts which constitute the essential elements of a crime involving moral turpitude . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i)(I). This syntax demonstrates that the focus of the statutory

inquiry in this case is not the acts of moral turpitude themselves, but the admissions establishing the essential elements of a particular type of crime, in this case, a crime involving moral turpitude. Therefore, this statutory language reinforces the conclusion that the focus of the inquiry directed by the statute is the alien's actual conviction, not the conduct underlying that conviction.

We also consider Congress' use of the word "conviction" in the moral turpitude statute. The meaning of the word does not change when used in an immigration statute, as opposed to its customary application in criminal statutes. To assign a different statutory meaning to the word "conviction" in the isolated context of crimes involving moral turpitude, and only within the realm of the INA, as the Attorney General proposes in *Silva-Trevino*, 24 I&N Dec. at 704, thus lacks both logic and statutory support.

Based on these considerations, we conclude that the plain language of the moral turpitude statute is not ambiguous. Because the relevant statutory language refers only to convictions, not to conduct or to "committing" acts, there is no uncertainty in the statutory language created by the use of the phrase "convicted of" in the same statute as the words "committing" and "involving." Thus, in a case such as the present one in which the only issue is the alien's prior conviction, the statute unambiguously directs that an adjudicator consider only the conviction itself, and not any underlying conduct.

B.

Because the moral turpitude statute is not ambiguous, DHS is authorized under *Chevron* to fill a gap in the statutory scheme only if the statute is silent regarding the process for determining whether a particular conviction qualifies as a crime involving moral turpitude. *See Chevron*, 467 U.S. at 843; *Nat'l City Bank v. Turnbaugh*, 463 F.3d 325, 332 (4th Cir. 2006). DHS argues that such a gap exists because neither

the INA generally, nor the moral turpitude statute in particular, prescribes the methodology by which an adjudicator determines whether a crime qualifies as a crime involving moral turpitude.

Contending that there is a gap in this aspect of the statutory language, DHS observes that the term "moral turpitude" will not arise in an alien's record of conviction because the phrase is not a statutory element of any state or federal crime. Therefore, DHS asserts, a circumstance-specific inquiry is permissible under the INA. Further, in an attempt to distinguish the Supreme Court's decisions in *Taylor* and *Shepard*, DHS emphasizes that these cases were decided in the context of criminal statutes and thus are not binding in interpreting the INA. We address these arguments in turn.

Although DHS is correct that the term "moral turpitude" is not usually an element of an offense and thus will not appear literally in the record of conviction, courts nevertheless have been able to interpret this phrase for over a century, and a robust body of law has developed in this regard. Moreover, DHS retains the authority to classify various types of offenses as "crimes involving moral turpitude," rendering fact-specific inquiries into individual violations unnecessary. *See Yousefi*, 260 F.3d at 326. And, plainly, prosecutors retain the ability to highlight aspects of moral turpitude present in individual offenses by ensuring that these aspects appear in the record of conviction in the content of plea colloquies, in explicit factual findings made by the trial judge, or in jury instructions given in the underlying criminal cases. *See Shepard*, 544 U.S. at 15; *Taylor*, 495 U.S. at 602.

Our conclusion is not altered by DHS's argument that the Supreme Court's holding in *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009), decided after the decision in *Silva-Trevino*, supports the use of a circumstance-specific analysis in applying the INA. DHS broadly asserts that the holding in *Nijhawan* permits an adjudicator to consider facts outside the record of

conviction when considering statutory criteria that are not characteristically an element of an offense. In *Nijhawan*, an alien faced removal for his conviction of an aggravated offense "that . . . involves fraud or deceit *in which the loss to the victim or victims exceeds $10,000*." *Id.* at 2297 (emphasis in original) (quoting 8 U.S.C. § 1101(a)(43)(M)(i)). The Court noted that this language does not refer to an element of the fraud or deceit crime but "to the particular circumstances in which an offender committed" this type of crime "on a particular occasion." *Id.* at 2298. DHS bases its argument on this specific language.

We disagree that the quoted language in *Nijhawan* permits an unrestricted circumstance-specific inquiry in the absence of express guidance from Congress. In 8 U.S.C. § 1101(a)(43)(M)(i), Congress modified the generic crime of "fraud or deceit" with a qualifying phrase that requires a fact-specific review. No analogous command exists in the moral turpitude statute in the INA. The phrase "crime involving moral turpitude" is not modified by any other statutory directive. Therefore, DHS's entreaty that we consider mere factual allegations made in the underlying criminal case cannot be reconciled with the statutory directives established by Congress in the INA.

In addition to the fact that there is no statutory support in the INA for expanding the reach of *Nijhawan*, practical considerations also demonstrate its inapplicability. As noted above, the phrase "crime involving moral turpitude" is a term of art in a way that "offense . . . in which the loss to the victim or victims exceeds $10,000" is not. The contours of the phrase "crime involving moral turpitude" have been developed over a long history of judicial interpretation, while the phrase a "loss [that] exceeds $10,000" is an objective criterion that requires no interpretation whatsoever. Thus, an inquiry whether a loss exceeds $10,000 involves only the inspection of a single threshold fact, but a determination whether a particular conviction was for a crime involving moral turpitude

often could require evaluation of all the evidence in an underlying criminal case by an adjudicator wholly unfamiliar with those proceedings.

Such an unbridled evaluation poses very real evidentiary concerns. The third step of the *Silva-Trevino* framework allows an immigration judge to rely on documents of questionable veracity as "proof" of an alien's conduct. These documents, such as police reports and warrant applications, often contain little more than unsworn witness statements and initial impressions. Indeed, these materials are designed only to permit a determination of probable cause. Further, because these submissions are generated early in an investigation, they do not account for later events, such as witness recantations, amendments, or corrections. To confer upon such materials the imprimatur of fact, even for the narrow application of removal proceedings involving questions of moral turpitude, accords these documents unwarranted validity.

Although DHS correctly observes that immigration removal proceedings are civil, rather than criminal, in nature, this difference does not affect the risks inherent in considering facts only alleged, but not necessarily proved, in the underlying criminal proceedings. As the Supreme Court has emphasized repeatedly, "the practical difficulties and potential unfairness of a factual approach are daunting." *Shepard*, 544 U.S. at 20; *Taylor*, 495 U.S. at 601. Therefore, we decline to sanction such a factual approach here.

Based on these considerations, we conclude that the moral turpitude statute is neither ambiguous nor silent, but explicitly directs that apart from certain types of admissions made by a defendant at his criminal proceedings, an adjudicator applying the moral turpitude statute may consider only the alien's prior conviction and not the conduct underlying that conviction. Thus, under the *Chevron* analysis, we do not defer to the Attorney General's establishment of a three-step procedural

framework for determining whether a particular conviction is for a crime involving moral turpitude.

We observe that our rejection of the *Silva-Trevino* framework is in accord with decisions of three of our sister circuits. In *Jean-Louis*, the Third Circuit engaged in an extensive analysis of the Attorney General's decision, concluding that the moral turpitude statute was not ambiguous. 582 F.3d 462. In a more abbreviated review, the Eighth Circuit declined an alien's entreaty to employ *Silva-Trevino*'s third step and held that the Attorney General's decision was not entitled to deference. *Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010). Most recently, the Eleventh Circuit rejected the *Silva-Trevino* framework after employing an analysis similar to the one we have applied here. *See Fajardo v. U.S. Attorney General*, 659 F.3d 1303 (11th Cir. 2011). In *Fajardo*, the Eleventh Circuit concluded that DHS's interpretation of the moral turpitude statute was not entitled to deference under *Chevron* because the term "conviction" is unambiguous. *Id.*

Upon our rejection of the *Silva-Trevino* framework, we apply the analysis developed in *Taylor* and *Shepard*. Accordingly, we proceed to consider the present record guided by those decisions.

V.

A.

To determine whether Prudencio's conviction was for a crime involving moral turpitude, we first apply the categorical approach. This approach is mandated by Congress' choice to define the condition of deportation in terms of "convictions," rather than "conduct." *See Taylor*, 495 U.S. at 600-01. This analysis requires that we examine the statutory elements of the crime, and not consider the facts or conduct of the particular violation at issue. *See Yousefi*, 260 F.3d at 326 (citing *Castle v. INS*, 541 F.2d 1064, 1066 (4th Cir. 1976) (per curiam)).

In employing these approaches for purposes of the INA, we accord the Attorney General deference regarding the determination of what type of conduct involves moral turpitude. *Yousefi*, 260 F.3d at 326. The Attorney General has directed that, generally, a crime involves moral turpitude if it is "inherently base, vile, or depraved and contrary to accepted rules of morality and the duties owed between persons or to society in general." *Matter of Olquin*, 23 I&N Dec. 896, 896 (B.I.A. 2006).

The delinquency statute, as we have observed, consists of two subsections. Subsection (i) punishes "[a]ny person 18 years of age or older . . . who willfully contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abused or neglected . . . ." Va. Code § 18.2-371. As DHS acknowledges, this subsection encompasses various behaviors, such as the inducement of a minor to commit the misdemeanor crime of trespassing, *see Hubbard v. Commonwealth*, 152 S.E.2d 250, 253 (Va. 1967), which do not qualify as crimes involving moral turpitude.

Subsection (ii) of the delinquency statute, however, criminalizes conduct of a different nature. That subsection punishes any person 18 years of age or older who "engages in consensual sexual intercourse with a child 15 or older not his spouse, child, or grandchild." Va. Code § 18.2-371.

The Attorney General has concluded that for purposes of applying the INA, "*any* intentional sexual contact by an adult with a child involves moral turpitude." *Silva-Trevino*, 24 I&N Dec. at 705 (emphasis in original); *see also Castle*, 541 F.2d at 1066 ("It is well established that the Maryland statutory offense of carnal knowledge of a female between the ages of fourteen and sixteen years manifestly involves moral turpitude.") (quotation marks omitted). Based on this determination by the Attorney General regarding the scope of conduct constituting a crime of moral turpitude under the INA, we

hold that a conviction under subsection (ii) of the delinquency statute constitutes a conviction of a crime involving moral turpitude. *See Yousefi*, 260 F.3d at 326. However, because the delinquency statute also encompasses behaviors that do not qualify as crimes involving moral turpitude, the categorical approach does not resolve our inquiry, and we proceed under the modified categorical approach to consider further whether Prudencio was convicted of a crime involving moral turpitude. *See Shepard*, 544 U.S. at 17.

## B.

Under the modified categorical approach, we review the record of conviction to determine whether the crime of which Prudencio was convicted qualifies as a crime involving moral turpitude. *See Taylor*, 495 U.S. at 602. In cases such as the one before us, in which the conviction at issue was based on a guilty plea, the record of conviction is composed of the charging document, the plea agreement, the plea colloquy, and any explicit findings of fact made by the trial judge. *Shepard*, 544 U.S. at 15.

Prudencio pleaded guilty to the amended charge of contributing to the delinquency of a minor, in violation of the delinquency statute. The record of conviction does not contain a plea colloquy or findings of fact by the trial judge, but consists only of a single form entitled "Warrant of Arrest—Felony." Although this warrant originally charged a violation of the carnal knowledge statute, the warrant later was amended to charge a violation of the delinquency statute, and a handwritten entry on the face of the document shows that Prudencio pleaded guilty to the amended charge. However, no other entry on the warrant, the sole document before us in the record of conviction, provides any information showing under which subsection of the delinquency statute Prudencio was convicted.

Although the police report indicated that Prudencio engaged in consensual sexual intercourse with a minor, that

report may not be considered as part of the record of conviction. *See Shepard*, 544 U.S. at 20-23. Further, the arrest warrant originally alleged a violation to which Prudencio did not plead guilty. Thus, Prudencio did not admit to any facts apart from the amended charge stated in the arrest warrant, and any other factual allegations cannot be attributed to him. *See United States v. Alston*, 611 F.3d 219, 227 (4th Cir. 2010).

We find no merit in DHS's contention that Prudencio has conceded that he was convicted of a crime involving moral turpitude, because he did not dispute the immigration judge's findings of fact and acknowledged that he initially was charged with carnal knowledge of a child 13 years of age. The findings of fact made by the immigration judge may not be considered under the modified categorical approach, because those findings were not part of Prudencio's record of conviction but were derived solely from information acquired under the third step of the *Silva-Trevino* procedural framework.

Prudencio's original charge likewise is irrelevant. The original charge on the warrant alleging a violation of the carnal knowledge statute was superseded once the warrant was amended to charge a violation of the delinquency statute. Thus, Prudencio's acknowledgement before the Board of the nature of his original charge does not constitute an admission of any particular conduct.

## VI.

In conclusion, we hold that DHS has not satisfied its burden of showing that Prudencio's 2010 conviction qualified as a crime involving moral turpitude. We therefore grant the alien's petition, vacate the immigration judge's order of removal, and enter final judgment in favor of Prudencio.

*PETITION GRANTED;*
*VACATED AND FINAL JUDGMENT*

SHEDD, Circuit Judge, dissenting:

The categorical approach adopted by the majority is a doctrine created by the judicial branch to address issues of concern to the judicial branch—protection of Sixth Amendment rights and efficient use of judicial resources. Although an agency may choose to adopt some version of this approach, there is no requirement to expand this difficult, almost unworkable, limiting analysis to an agency, especially in the immigration context, and I would not do so.

Instead, employing the familiar analysis prescribed by *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), I would defer to the Attorney General's position in *Matter of Silva-Trevino*, 24 I & N Dec. 687, 688-90 (A.G. 2008). The *Chevron* analysis, and the deference it counsels, is particularly applicable in the immigration context. As we have noted, "[i]n considering the Attorney General's interpretation of the [Immigration and Nationality Act], we are mindful of the fact that 'the power to expel or include aliens [is] a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'"[1] The Supreme Court has reminded lower courts that "it is important to underscore the limited scope of judicial inquiry into immigration legislation," and that "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (quoting *Oceanic Navigation Co. v. Stranahan*, 214 U.S. 320, 339 (1909)).

---

[1]*Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 278 (4th Cir. 2004) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (internal quotation marks omitted)); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (quoting *INS v. Abudu*, 485 U.S. 95, 110 (1988) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'").

We summarized the broad scope of this deference in *Blanco de Belbruno*:

> The Attorney General enjoys broad powers with respect to "the administration and enforcement of [the INA] and all other laws relating to the immigration and naturalization of aliens." 8 U.S.C. § 1103(a)(1) (2000). The INA empowers the Attorney General to "establish such regulations; . . . issue such instructions; and perform such other acts as he deems necessary for carrying out his authority" under the immigration laws. 8 U.S.C. § 1103(a)(3) (2000).

*Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 279 (4th Cir. 2004).

The immigration context provides the executive with the broadest discretion to act, but the majority denies them the slightest discretion to engage in further inquiry in a small number of cases where the categorical approach does not yield a definitive answer. Therefore, I respectfully dissent.

## I.

Ricardo Prudencio, at the age of 20, had sex with a 13-year-old girl and infected her with a sexually transmitted disease. Prudencio pled guilty to one count of contributing to the delinquency of a minor, in violation of Virginia Code Annotated § 18.2-371. As a legal permanent resident, Prudencio is subject to removal if he is "convicted of" a "crime involving moral turpitude." 8 U.S.C. § 1227(a)(2)(A)(i)(I).

In *Matter of Silva-Trevino*, the Attorney General, concerned with the "patchwork of different approaches across the nation" courts applied to the moral turpitude provisions, determined that, in certain limited circumstances, immigration judges may consider evidence beyond the record of convic-

tion in determining if an alien was convicted of a "crime involving moral turpitude." 24 I & N Dec. at 688. Using this approach, the Board of Immigration Appeals (BIA) determined that Prudencio was convicted of a crime involving moral turpitude. Specifically, the BIA concluded that Prudencio's record of conviction was inconclusive as to whether he was convicted of a crime involving moral turpitude, but that the immigration judge's findings of fact—which Prudencio did not dispute—showed that Prudencio had a sexual encounter with a "child 13 years of age," and that his conviction was for a crime involving moral turpitude. (J.A. 107).

In contrast, the majority decides that by using the term "convicted," Congress unambiguously mandated that courts apply the "categorical approach" created by the Supreme Court in *Shepard v. United States*, 544 U.S. 13 (2005) and *Taylor v. United States*, 495 U.S. 575 (1990) for use in enhancing sentences under the Armed Career Criminal Act. The majority further concludes that, as a result, immigration judges are prohibited from looking at evidence beyond the record of conviction to determine if a conviction was for a "crime involving moral turpitude." In reaching this conclusion, the majority necessarily declines to defer to *Silva-Trevino*.

I disagree with the majority. Like the Seventh Circuit, I conclude that "when deciding how to classify convictions under criteria that go beyond the criminal charge-such as . . . whether the crime is one of 'moral turpitude,' the agency has the discretion to consider evidence beyond the charging papers and judgment of conviction." *Ali v. Mukasey*, 521 F.3d 737, 743 (7th Cir. 2008). Moreover, I question the wisdom of imposing an approach on immigration judges that we have, at times, proven unable to apply in a workable fashion in the Armed Career Criminal Act context where it is required. *See, e.g.*, *United States v. Vann*, ___ F.3d ___, 2011 WL 4793230, at *14 (4th Cir. 2011) (Agee, J., concurring).[2] As Justice Alito

---

[2]The twelve judges who participated in *Vann* accounted for a total of six opinions plus a *per curiam* opinion announcing the judgment of the court.

has noted, "the 'categorical approach' to predicate offenses has created numerous splits among the lower federal courts," and "clarity has been the true inadvertent casualty" of the approach. *Chambers v. United States*, 555 U.S. 122, 133 (2009) (Alito, J., concurring).[3]

At bottom, I find it difficult—if not impossible—to accept that Congress intended for persons such as Prudencio to remain in the United States "simply because there might have been no moral turpitude in the commission by other individuals (real or hypothetical) of crimes described by the wording of the same statute under an identical indictment." *Marciano v. INS*, 450 F.2d 1022, 1027 (8th Cir. 1971) (Eisele, J., dissenting).

## II.

In applying *Chevron*, we first consider whether "Congress has directly spoken to the precise question" at issue. *Chevron*, 467 U.S. at 842. If Congress has so spoken, the inquiry ends because courts and agencies "must give effect to the unambiguously expressed intent of Congress." *Id.* at 843. If the statute is silent, however, "agencies [generally] have authority to fill gaps." *Nat'l Cable & Telecomm. Ass'n v. Gulf Power Co.*, 534 U.S. 327, 339 (2002). In cases of statutory silence, we "must defer, under *Chevron*, to [an agency's interpretation of its governing statute], so long as that interpretation is *permissible* in light of the statutory text and *reasonable*." *Ohio Valley Envtl. Coal. v. Bulen*, 429 F.3d 493, 498 (4th Cir. 2005) (internal quotation marks omitted) (emphasis added).

The INA provides several moral turpitude provisions, one of which is relevant to our case. Section 1227(a)(2)(A)(i)(I)

---

[3]In fact, it was the categorical approach's uncanny ability to sow confusion and create circuit splits that prompted the Attorney General's decision to implement a uniform framework for the moral turpitude provisions in *Silva-Trevino*.

provides for the removal of an alien "convicted of" a "crime involving moral turpitude." In *Silva-Trevino*, the Attorney General laid out an in-depth approach to applying the moral turpitude provisions of the INA in response to the "patch-work" application of those provisions that the categorical approach had wrought. *Silva-Trevino*, 24 I & N Dec. at 688. As the Attorney General noted, "confusion remains about what, if anything, may follow such an inquiry where categorical analysis does not resolve the question" of whether an alien was convicted of a crime involving moral turpitude. *Silva-Trevino*, 24 I & N Dec. at 694.[4] In an effort to resolve the lack of uniform treatment of the moral turpitude provisions across the federal circuits, the Attorney General set forth the following test:

> First, in evaluating whether an alien's prior offense is one that categorically involves moral turpitude, immigration judges must determine whether there is a "realistic probability, not a theoretical possibility," that the State or Federal criminal statute pursuant to which the alien was convicted would be applied to reach conduct that does not involve moral turpitude. *Cf. Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

> Second, where this categorical analysis does not resolve the moral turpitude inquiry in a particular case, an adjudicator should proceed with a "modified categorical" inquiry. In so doing, immigration judges should first examine whether the alien's record of conviction—including documents such as the indictment, the judgment of conviction, jury instructions,

---

[4]In determining that the statutory language permitted this approach, the Attorney General relied on the Seventh Circuit's opinion in *Ali* and the BIA's opinion in *Matter of Babaisakov*, 24 I & N Dec. 306 (BIA 2007), which adopted a circumstance-specific approach to 8 U.S.C. § 1101(a)(43)(M)(i).

> a signed guilty plea and the plea tran-
> script—evidences a crime that in fact involved moral
> turpitude. When the record of conviction is inconclu-
> sive, judges may, to the extent they deem it neces-
> sary and appropriate, consider evidence beyond the
> formal record of conviction. The goal of this inquiry
> is to discern the nature of the underlying conviction
> where a mere examination of the statute itself does
> not yield the necessary information; it is not an occa-
> sion to relitigate facts or determinations made in the
> earlier criminal proceeding.

*Id.* at 689. Thus, under this approach, the first two steps hew closely to the *Shepard*/*Taylor* categorical and modified categorical approaches. It is only the third step that moves beyond the modified categorical approach, permitting immigration judges to examine additional evidence in cases where the first two steps fail to provide a definitive answer to the moral turpitude inquiry "if doing so is necessary and appropriate to ensure proper application of the Act's moral turpitude provisions." *Id.* at 699. This language does not create an open-ended and unworkable approach, but rather limits the immigration judge's ability to consider additional evidence, prohibiting the judge from engaging in fishing expeditions.[5]

The majority concludes that the term "convicted" unambiguously requires the categorical approach and, accordingly, that there is no gap for the Attorney General to fill. The majority further concludes that the phrase "crime involving moral turpitude" does not create any ambiguity because "involving" does not counsel an individualized approach.

I agree with the majority that the term "convicted" is unambiguous, but I do not agree that its appearance in a statute

---

[5]In addition to this limitation, the BIA and immigration judges also would be required to apply "fundamentally fair procedures" in receiving additional evidence. *Nijhawan v. Holder*, 129 S.Ct. 2294, 2303 (2009).

unambiguously requires immigration judges to apply the categorical approach to the moral turpitude provisions. Instead, the statute is simply silent as to what approach immigration judges may use in applying the "moral turpitude" provisions. I would defer to the Attorney General's opinion in *Silva-Trevino*, which represents a measured approach to determining whether an alien was convicted for a "crime involving moral turpitude." Several reasons lead me to this conclusion.

First, the bases for applying the categorical approach are inapplicable in this setting. The *Taylor/Shepard* approach was created for application in criminal sentencings "out of desire for the 'avoidance of collateral trials,'" or the "specter of mini-trials," *United States v. Dean*, 604 F.3d 169, 175 (4th Cir. 2010) (quoting *Shepard*, 544 U.S. at 23), and the "allocation of tasks between judge and jury under the sixth amendment," *Ali*, 521 F.3d at 741. Of course, "[n]either of these reasons applies to immigration proceedings." *Id. Cf. United States v. Savillon-Matute*, 636 F.3d 119, 123 n.6 (4th Cir. 2011) (noting doubt about continuing vitality of categorical approach in Sentencing Guidelines for same reasons); *Dean*, 604 F.3d at 173-74 (noting *Shepard*'s Sixth Amendment rationale no longer applicable to advisory Sentencing Guidelines). Immigration proceedings are civil, not criminal, thus negating any Sixth Amendment concerns, "[a]nd how much time the agency wants to devote to the resolution of particular issues is, we should suppose, a question for the agency itself rather than the judiciary." *Ali*, 521 F.3d at 741. The efficient operation of the executive branch is simply not the judiciary's responsibility. *See Vermont Yankee Nuclear Power Corp. v. Natural Res. Def. Counsel, Inc.*, 435 U.S. 519, 544 (1978) ("[T]he agency should normally be allowed to exercise its administrative discretion in deciding how, in light of internal organization considerations, it may best proceed to develop the needed evidence.") (internal quotation marks omitted); *Blanco de Belbruno*, 362 F.3d at 280 (noting that "how [the Attorney General] allocates those resources to address the burden of increasing claims is a calculation that courts should

be loathe to second guess"). Thus, because the bases for *Shepard* and *Taylor* are inapplicable in the immigration context, I do not believe Congress's use of the term "convicted" necessarily requires the categorical approach.[6]

Second, I believe recent Supreme Court precedent weakens the argument that the categorical approach is required for the moral turpitude provisions. In *Nijhawan*, the Court was tasked with answering whether to apply the categorical approach in the immigration context to determine if a prior conviction was for "an offense that . . . involves fraud or deceit in which the loss to the . . . victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i). The Court began by noting the "interpretive difficulty" the statute posed was due to the fact "that in ordinary speech words such as 'crime,' 'felony,' 'offense,' and the like sometimes refer to a generic crime, say, the crime of fraud or theft in general, and sometimes refer to the spe-

---

[6]The majority, and the Third and Eleventh Circuits, in *Jean-Louis v. Attorney General*, 582 F.3d 462 (3d Cir. 2009), and *Fajardo v. U.S. Atty. Gen.*, 659 F.3d 1303 (11th Cir. 2011), also rely on the fact that courts have long applied what has been called a traditional or categorical approach in immigration proceedings. Under *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005), "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982. In this situation, "that's not what [earlier caselaw] say[s]. . . . [It] just carr[ies] over to immigration proceedings an approach familiar to the federal judiciary from criminal prosecutions." *Ali*, 521 F.3d at 743.

It is somewhat ironic that one of the first reported cases applying the categorical approach, *United States ex rel. Mylius v. Uhl*, 210 F. 860 (2d Cir. 1914), concluded the approach was necessary, in part, to guarantee the "uniform and efficient administration of the law," *id.* at 862, and to prevent the "manifestly unjust" result of "exclud[ing] one person and admit[ting] another where both were convicted of [the same crime]," *id.* at 863. Of course, as the Attorney General recounted in *Silva-Trevino*, the categorical approach causes the very problems it supposedly was created to address.

cific acts in which an offender engaged on a specific occasion." *Nijhawan*, 129 S.Ct. at 2298. The Court explained that if the statute referred to a "generic" crime, the categorical approach was appropriate, but that if the statute was "referring to the specific way in which an offender committed the crime on a specific occasion," then the Court "must look to the facts and circumstances underlying an offender's conviction." *Id.* at 2298-99.

The *Nijhawan* Court ultimately concluded that § 1101(a)(43)(M)(i) required a "circumstance-specific" approach, not the *Shepard/Taylor* categorical approach. *Id.* at 2301. The Court found that the use of "in which" counseled for such an approach and further noted that very few state or federal statutes specifically have a $10,000 threshold as an element of the offense, thus distinguishing the provision from the types of "generic" offenses listed in the ACCA. *Id.* at 2301-02.

Relying on *Nijhawan*, both the Fifth Circuit and our own court recently noted that the categorical approach is not always required in immigration cases. *See Salem v. Holder*, 647 F.3d 111, 119 (4th Cir. 2011) (declining to apply categorical approach to an alien's burden of production and noting "the Supreme Court has expressed some reservation about a wholesale adoption of the categorical approach in the immigration context"); *Bianco v. Holder*, 624 F.3d 265, 272-73 (5th Cir. 2010) (noting that court had previously applied the categorical approach to the moral turpitude provisions but nonetheless applying circumstance-specific approach to determine whether an alien had been "convicted of . . . domestic violence").

Like the provision at issue in *Nijhawan*, the moral turpitude provisions have no analogue in federal or state criminal statutes and "moral turpitude" is not an element of any offense. In addition, the presence of the word "involving," like the phrase "in which" at issue in *Nijhawan*, suggests a more indi-

vidualized approach.[7] In sum, "[t]he need to decide whether a crime is one of 'moral turpitude' does not have a parallel in criminal cases," because "'moral turpitude' just isn't relevant to the criminal prosecution; it is not as if 'turpitude' were an element of an offense." *Ali*, 521 F.3d at 741-42.[8] In my view, the phrase "crime involving moral turpitude" "cannot possibly refer to a generic crime. . . . because there is no such generic crime." *Nijhawan*, 129 S.Ct. at 2300-01.

In light of these factors, and with due regard for the level of deference owed to the Attorney General in immigration matters, I believe that immigration judges have "the discretion to consider evidence beyond the charging papers and judgment of conviction" in determining if an alien was convicted of a crime involving moral turpitude, *Ali*, 521 F.3d at 743. Therefore, I would defer to the Attorney General's approach in *Silva-Trevino*. *See Mata-Guerrero v. Holder*, 627 F.3d 256, 260 (7th Cir. 2010) (deferring to *Silva-Trevino*).

---

[7]The majority concludes that the word "involving" does not create any ambiguity in the statute because the entire phrase, "crime involving moral turpitude" is a term of art. The phrase simply cannot be viewed with such clarity. *See Jordan v. De George*, 341 U.S. 223, 235 (1951) (Jackson, J., dissenting) ("It is not one which has settled significance from being words of art in the profession.")

[8]For this reason, it is not practical for the majority to suggest that the burden is somehow on federal and state criminal prosecutors to alleviate the harshness of the majority's result by "ensuring that these aspects appear in the record of conviction." (Majority Op. at 15). Prosecutors have a difficult enough job, and I do not believe we should add to their burden by requiring that they ensure certain materials necessary for a civil proceeding that may (or may not) occur at some indeterminate point in the future are included in the record of conviction for the convenience of a court in another jurisdiction and another context. Instead, deferring to reasonable agency procedures to find this needed information provides the accepted and appropriate manner to address such situations.

### III.

Applying *Silva-Trevino* to this case, I would deny Prudencio's petition for review. Prudencio pled guilty to one count of violating Va. Code Ann. §18.2-371, which provides:

> Any person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228, or (ii) engages in consensual sexual intercourse with a child 15 or older not his spouse, child, or grandchild, shall be guilty of a Class 1 misdemeanor.

Subsection (ii) encompasses crimes involving moral turpitude, while subsection (i) does not. The Government introduced the following evidence to prove Prudencio's conviction: the police incident report; the warrant for carnal knowledge, without force, of a 13-year-old child; and the court form showing Prudencio's guilty plea to contributing to the delinquency of a minor. Nothing in these documents conclusively shows whether Prudencio pled guilty to subsection (i) or (ii), so I believe the immigration judge was permitted to advance to the third step of *Silva-Trevino*. Applying that step, the police incident report serves as proof that Prudencio was convicted of a crime involving moral turpitude: as a 20-year-old he had sexual intercourse with a 13-year-old, infecting her with a sexually transmitted disease. Prudencio's crime is the kind of "vile" or "depraved" act the moral turpitude provision was enacted to address.

### IV.

In sum, I disagree with the majority that the term "convicted" requires unyielding adherence to the categorical approach to a provision that is not in the Armed Career Crimi-

nal Act and does not list a "generic" offense. Instead, I believe the statute is silent as to what procedures an immigration judge may use to determine if an alien was "convicted" of a "crime involving moral turpitude," and I would defer to the Attorney General's approach in *Silva-Trevino*. In reaching a contrary conclusion, I believe the majority has operated a significant shift in the law by dictating to the executive branch's immigration judges how they may use their administrative resources, and in turn ensuring that some immigrants whose convictions were for crimes involving moral turpitude—like Prudencio—remain in the country. It is difficult to believe that Congress intended for courts to straitjacket immigration courts with a doctrine based on concerns peculiar to the federal judiciary to enable individuals who infect underage girls with sexually transmitted diseases to avoid removal by pleading guilty to an overbroad statute that includes both crimes involving moral turpitude and crimes that do not. For the foregoing reasons, I respectfully dissent.