UNITED STATES ex rel. MYLIUS v. UHL.

(Circuit Court of Appeals, Second Circuit. January 13, 1914.)

No. 65.

1. ALIENS (§ 47*)—RIGHT TO ENTER—DISQUALIFICATION—CONVICTION OF MISDEMEANOR INVOLVING "MORAL TURPITUDE."

Conviction of an Englishman of criminal libel against the King by charging him with bigamy in putting away his lawful wife in order to obtain a woman of royal blood was not a conviction of a misdemeanor involving moral turpitude, within Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. §99 (U. S. Comp. St. Supp. 1911, p. 500), providing that aliens who have

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

been convicted of a felony, or other crime or misdemeanor involving moral turpitude, shall be excluded from the United States.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 106; Dec. Dig. § 47.*

For other definitions, see Words and Phrases, vol. 5, pp. 4580, 4581.]

2. ALIENS (§ 54*) — EXCLUSION — CONVICTION OF MISDEMEANOR INVOLVING MORAL TURPITUDE.

Whether an alien seeking to enter the United States has been convicted of a misdemeanor involving moral turpitude so as to justify his exclusion as provided by Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. p. 899 (U. S. Comp. St. Supp. 1911, p. 500), must be determined by the judgment of conviction, and not from the testimony adduced at the trial.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

3. ALIENS (§ 46*) — EXCLUSION — CONVICTION OF MISDEMEANOR INVOLVING MORAL TURPITUDE. ·

Where an alien has been convicted of a crime which in its essence does not involve moral turpitude, he cannot be excluded on that ground when applying to enter the United States because of evidence outside the record showing that he is a depraved person.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 105; Dec. Dig. § 46.*]

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by the United States, on the relation of Edward F. Mylius, against Byron H. Uhl, Acting Commissioner of Immigration, to obtain relator's discharge from detention under a deportation warrant. From an order sustaining the writ (203 Fed. 152), respondent appeals. Affirmed.

On appeal from an order of the District Court of the United States for the Southern District of New York sustaining a writ of habeas corpus and discharging the relator, who is an alien and a subject of the King of England. He arrived at the port of New York, September 22, 1912, and was brought before a Board of Special Inquiry on the charge that he had been convicted of a criminal libel which, the appellant contends, is a crime involving moral turpitude under the act of February 20, 1907, c. 1134 (34 Stat. L. 898 [U. S. Comp. St. Supp. 1911, p. 499]), as amended. The board found against the relator upon this issue and he was ordered deported. He appealed to the Secretary of Commerce and Labor who affirmed the decision of the board. Thereafter the relator sued out the writ of habeas corpus as before stated.

H. Snowden Marshall, U. S. Atty., and John Neville Boyle, Asst. U. S. Atty., both of New York City, for appellant.

Simon O. Pollock, of New York City, for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

COXE, Circuit Judge. The appellee was convicted of libel in the King's Bench Division of the High Court of Justice and sentenced by the Lord Chief Justice, who presided at the trial, to 12 months' imprisonment, this being the maximum punishment under the law. The indictment was laid under the fifth section of Lord Campbell's Libel Act which provides for the punishment of any person who "shall maliciously publish any defamatory libel."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1] The libel in question charged, in substance; that the present King of England during the year 1890 was married to the daughter of Admiral Sir Michael Culme-Seymour at the Island of Malta and that he subsequently abandoned her in order to obtain a woman of royal blood for his wife, and, by so doing, committed bigamy. It further charged that the daughter of Admiral Seymour, if still living, is the lawful queen of England and her children are the only rightful heirs to the English throne.

The question presented is whether a conviction under a charge of having maliciously published a defamatory libel justifies the exclusion of the appellee under a statute which provides that aliens "who have been convicted of * * * a felony or other crime or misdemeanor involving moral turpitude" shall be excluded from the United States. 34 Stat. L. page 899.

The question may be narrowed still further to the inquiry, Does the publication of a defamatory libel necessarily involve moral turpitude? We are of the opinion that it does not. We, of course, do not lose sight of the extreme brutality of the libel, involving, as it does, not only the King, but the Queen, her children and the daughter of Admiral Seymour. But we are dealing with laws designed to exclude from this country those whose records abroad are such as to warrant the inference that they are depraved and will continue to belong to the criminal classes. In construing these laws we should proceed on broad general lines, considering all persons as equal before the law. A decision which makes the infamy of the libel dependent upon the rank of the person libeled cannot be defended either in law or ethics. If it would not involve moral turpitude to publish this libel of a field laborer in Devon or a street sweeper in London, it would not involve moral turpitude to publish it regarding the Lord Chancellor or even the King.

Indirectly such a libel may involve the crime of lèse-majesté or treason, but the only crime charged in the indictment is maliciously publishing the defamatory libel as stated. Issue was joined on that charge and the verdict determined that the defendant had published such a libel, but nothing more. He was not convicted of lèse-majesté or treason and even should the testimony on the trial show him to be guilty of other crimes, the immigration officers must confine themselves to the judgment in determining whether or not he has been convicted of a crime involving moral turpitude. It is not enough that the evidence shows that the immigrant has committed such a crime, the record must show that he was convicted of the crime. To illustrate: A statute of the United States (Rev. St. § 2139) makes it a crime to give a glass of whisky to an Indian under the charge of an Indian agent. A conviction under this section would not be proof of moral turpitude, although the evidence at the trial might disclose the fact that the whisky was given for the basest purposes.

[2] On the other hand, the rule which confines the proof of the nature of the offense to the judgment is clearly in the interest of a uniform and efficient administration of the law and in the interest of the immigration officials as well, for if they may examine the testi-

mony on the trial to determine the character of the offense, so may the immigrant. How could the law be speedily and efficiently administered if an immigrant convicted of perjury, burglary or murder, is permitted to show from the evidence taken at the trial that he did not commit a felony, but a misdemeanor only?

Confining the inquiry, therefore, to the judgment of conviction of having published maliciously a defamatory libel, it is manifest that moral turpitude is not an essential ingredient of this crime, which was a misdemeanor at common law. The sentence did not include hard labor and was to be served, not in a state prison, but in a local London institution where, presumably only misdemeanants are confined. Again, as pointed out by Judge Noyes, editors and publishers have often been convicted of publishing criminal libels who were wholly ignorant of the libel and its publication. So, too, corporations have been convicted of criminal libel, but, having no souls, it can hardly be said that their act involved moral turpitude. That a person wholly free from moral turpitude may be convicted under Lord Campbell's Act is practically admitted by the United States Attorney. At page 4 of the appellant's brief he said:

"It is also true that there may perhaps be cases of criminal libel of the nature Judge Noyes has indicated which are not infamous crimes and do not involve moral turpitude."

We reach, therefore, the conclusion:

First. That the immigration officers act in an administrative capacity. They do not act as judges of the facts to determine from the testimony in each case whether the crime of which the immigrant is convicted does or does not involve moral turpitude.

Second. That this question must be determined from the judgment of conviction and not from the testimony adduced at the trial.

[3] Third. That the law must be administered upon broad general lines and if a crime does not in its essence involve moral turpitude, a person found guilty of such crime cannot be excluded because he is shown, aliunde the record, to be a depraved person.

Fourth. That the law must be uniformly administered. It would be manifestly unjust so to construe the statute as to exclude one person and admit another where both were convicted of criminal libel, because, in the opinion of the immigration officials, the testimony in the former case showed a more aggravated offence than in the latter.

Fifth. That the crime of publishing a criminal libel does not necessarily involve moral turpitude. It may do so, but moral turpitude is not of the essence of the crime.

The order is affirmed.