[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 12, 2011
JOHN LEY
CLERK

Nos. 09-12962 and 09-14845

_____

Agency No. A077-675-707

CAMILO ERNESTO SANCHEZ FAJARDO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petitions for Review of a Decision of the
Board of Immigration Appeals

_____

(October 12, 2011)

Before BARKETT and MARCUS, Circuit Judges, and RESTANI,[*] Judge.

BARKETT, Circuit Judge:

_____

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

Camilo Ernesto Sanchez Fajardo, a lawful permanent resident, petitions for review of the decision of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") order of removal rendered on the ground that he was inadmissible to the United States because he was "convicted of . . . a crime involving moral turpitude" under § 212(a)(2)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(2)(A)(i)(I), due to his conviction for false imprisonment under § 787.02, Florida Statutes.

## I. BACKGROUND AND PROCEDURAL HISTORY

Sanchez Fajardo, a native and citizen of Cuba, was admitted to the United States as a lawful permanent resident in February 2002. One month later, he was arrested in Florida and ultimately convicted of false imprisonment, misdemeanor assault, and misdemeanor battery, as a result of an altercation with his wife.

After returning to the United States from a visit abroad in 2005, Sanchez Fajardo was stopped at Miami International Airport and placed in removal proceedings by the Department of Homeland Security ("DHS") on the ground that his convictions qualified as convictions of crimes involving moral turpitude. He moved to terminate the proceedings, contending that his prior convictions could not be deemed convictions of crimes involving moral turpitude. The DHS conceded that the assault and battery convictions were not convictions of crimes involving moral turpitude. However, the IJ and the BIA concluded that his

2

conviction for false imprisonment constituted a conviction of such a crime, and ordered his removal on that ground.

To determine whether a conviction for a particular crime constitutes a conviction of a crime involving moral turpitude, both this Court and the BIA have historically looked to "the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct." Itani v. Ashcroft, 298 F.3d 1213, 1216 (11th Cir. 2002); Matter of Velazquez-Herrera, 24 I. & N. Dec. 503, 513 (BIA 2008) ("For nearly a century, the Federal circuit courts of appeals have held that where a ground of deportability is premised on the existence of a 'conviction' for a particular type of crime, the focus of the immigration authorities must be on the crime of which the alien was convicted, to the exclusion of any other criminal or morally reprehensible acts he may have committed."). This framework has come to be known as a categorical approach. Taylor v. United States, 495 U.S. 575, 600 (1990) (defining the "categorical approach" as "looking only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions").

If the statutory definition of a crime encompasses some conduct that categorically would be grounds for removal as well as other conduct that would not, then the record of conviction—i.e., the charging document, plea, verdict, and sentence—may also be considered. Jaggernauth v. U.S. Att'y Gen., 432 F.3d

3

1346, 1354-55 (11th Cir. 2005). This has been called the modified categorical approach. See Gonzales v. Duenas-Alvarez, 549 U.S. 183, 185-187 (2007) (referencing the categorical and modified categorical approach "[i]n determining whether a conviction . . . falls within the scope of a listed offense [under the INA]"). However, counts charging separate offenses, even if simultaneously charged, may not be combined and considered collectively to determine whether one or the other constitutes a conviction of a crime involving moral turpitude. See Jaggernauth, 432 F.3d at 1355 (citing Matter of Short, 20 I. & N. Dec. 136, 139 (BIA 1989)).

In this case, the count charging Sanchez Fajardo with false imprisonment merely tracked the general language of § 787.02(1)(a), Fla. Stat., alleging that he "without lawful authority did then and there forcibly by threat, or secretly confine, abduct, imprison or restrain another person . . . against that person's will . . . ." According to the statutory language, a person can be convicted of false imprisonment in Florida either by using forcible threats, or through secretly confining or restraining another, for example by locking or barring a door. It is not clear from the record of Sanchez Fajardo's false imprisonment conviction whether the false imprisonment charge resulted from the use of forcible threats or merely from nonviolent confinement or restraint. Thus, under the categorical approach, if either the use of forcible threats or secret confinement or restraint would not

4

constitute a "crime involving moral turpitude," Sanchez Fajardo could not be deemed inadmissible under INA § 212(a)(2)(A)(i)(I).

However, to conclude that Sanchez Fajardo was inadmissible, the IJ considered and relied upon extraneous information outside the record of his false imprisonment conviction—to wit, information regarding his misdemeanor assault and battery convictions[1]—to determine that his false imprisonment conviction fell "strictly into the area in which an individual is restraining the liberty of another person without lawful authority by force or threats," and thus qualified as a conviction of a crime involving moral turpitude. Sanchez Fajardo argued that, given the lack of clarity in the statute and in his record of conviction, as well as the government's concession that his assault and battery convictions were not convictions of crimes involving moral turpitude, the IJ erred in relying on those misdemeanor convictions to determine that his false imprisonment conviction satisfied INA § 212(a)(2)(A)(i)(I).

The BIA rejected Sanchez Fajardo's argument and dismissed his appeal on the ground that the Attorney General decision in Matter of Silva-Trevino, 24 I. & N. Dec. 687 (A.G. 2008), which was issued in November 2008, rejected the categorical approach employed by most courts, including ours, and held that the IJ

---

[1] It is not clear, however, from the record of Sanchez Fajardo's false imprisonment conviction whether the false imprisonment occurred at the same time as the assault and battery.

could consider extraneous information, such as Sanchez Fajardo's misdemeanor assault and battery convictions.[2]

The government argues that we must affirm the IJ's and the BIA's decisions because the Attorney General's construction of § 212(a)(2)(A)(i)(I) of the INA in Silva-Trevino is entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). Sanchez Fajardo responds that because the statutory language at issue is clear and unambiguous, the Attorney General's decision is not entitled to deference and we must apply our precedent requiring use of the categorical methodology.[3]

## II. DISCUSSION

Section 212(a)(2)(A)(i)(I) of the INA, written in the disjunctive, provides

---

[2] Silva-Trevino directs adjudicators, in analyzing a "conviction" to:

> (1) look first to the statute of conviction under the categorical inquiry . . . (2) if the categorical inquiry does not resolve the question, look to the alien's record of conviction . . . and (3) if the record of conviction does not resolve the inquiry, consider any additional evidence the adjudicator determines is necessary or appropriate to resolve accurately the moral turpitude question.

24 I. & N. Dec. at 704.

[3] We have jurisdiction to review the "constitutional claims or questions of law raised upon a petition for review," including the legal questions of whether Sanchez Fajardo's false imprisonment conviction qualifies as a "crime involving moral turpitude" and whether Silva-Trevino constitutes a permissible interpretation of the INA. See 8 U.S.C. § 1252(a)(2)(D); Keungne v. U.S. Att'y Gen., 561 F.3d 1281, 1283 (11th Cir. 2009). Where, as is the case here, the BIA issues its own decision but relies in part on the IJ's reasoning, we review both decisions. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

three different ways for the government to demonstrate that a respondent is inadmissible: (1) by proving that he was convicted of a crime involving moral turpitude; (2) by proving that he admitted to having committed such a crime; and (3) by proving that he admitted to committing acts that constitute the essential elements of such a crime. 8 U.S.C. § 1182(a)(2)(A)(i)(I).

In this case, the IJ and the BIA deemed Sanchez Fajardo inadmissible based only on the first prong of INA § 212(a)(2)(A)(i)(I), that is, that he was "convicted" of a particular category of crime. They relied on Silva-Trevino, which addresses this first prong of INA § 212(a)(2)(A)(i)(I) and sets out an "administrative framework for determining whether an alien has been convicted of a crime involving moral turpitude," 24 I. & N. Dec. at 689, that permits the consideration of "any additional evidence the adjudicator determines is necessary or appropriate," id. at 704.

As a general rule, an agency's interpretation of a statute which it administers is entitled to deference if the statute is silent or ambiguous and the interpretation is based on a reasonable construction of the statute. Chevron, 467 U.S. at 843-44. However, where Congress has spoken clearly, we do not defer to an agency's interpretation of the statute, as we "must give effect to the unambiguously expressed intent of Congress." Id. at 842-43. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the

7

precise question at issue, that intention is the law and must be given effect." Id. at 843 n.9. Thus we must first address the question of whether there is any ambiguity in the first prong of INA § 212(a)(2)(A)(i)(I), providing that "any alien convicted of . . . a crime involving moral turpitude . . . is inadmissible," 8 U.S.C. § 1182(a)(2)(A)(i)(I) (emphasis added), such that Congress delegated authority to the Attorney General to fill a statutory gap.

We begin by noting that courts have generally not found any ambiguity in provisions in the INA and earlier immigration statutes premising an alien's removability on the existence of a "conviction" for a particular type of crime. Instead, courts have consistently held that Congress's use of the term "conviction," which the INA defines as "a formal judgment of guilt," 8 U.S.C. § 1101(a)(48)(A), demonstrated its intent to require adjudicators to apply the categorical and modified categorical approach. As early as 1914, the Second Circuit interpreted Section 2 of the Immigration Act of February 20, 1907, 34 Stat. 898, 899—which required the exclusion of persons "convicted" of a crime involving moral turpitude—as directing immigration officials to determine whether a conviction under a statute "necessarily" and "in its essence" involved moral turpitude, and to prohibit consideration of the particular conduct underlying the conviction. U.S. ex

8

rel. Mylius v. Uhl, 210 F. 860, 863 (2d Cir. 1914).[4]  Such a categorical approach

was necessary, the court reasoned, to ensure the "uniform and efficient

administration of the law," id. at 862, to prevent immigration officials and aliens

from reinterpreting evidence underlying a conviction "to determine the character of

the offense," id. at 862-63, and to prevent the "manifestly unjust" result of

"exclud[ing] one person and admit[ting] another where both were convicted of [the

same crime]," id. at 863.  Likewise, the First Circuit, construing the same statutory

language in 1925 and concluding that Congress's use of the term "conviction"

required use of the categorical approach, noted that "Congress has not deemed it

expedient to give immigration officers general power to determine questions of

guilt or innocence, and has limited them to excluding such criminals as have been

convicted or admit their guilt."  Howes v. Tozer, 3 F.2d 849, 852 (1st Cir. 1925).

Consistent with this interpretation of Congress's intent, this Court, on no

less than five occasions, has applied the categorical or modified categorical

approach to determine whether convictions were convictions of crimes involving

---

[4] See U.S. ex rel. Zaffarano v. Corsi, 63 F.2d 757, 759 (2d Cir. 1933) ("This language means that neither the immigration officials nor the court reviewing their decision may go outside the record of conviction to determine whether in the particular instance the alien's conduct was immoral.  And by the record of conviction we mean the charge (indictment), plea, verdict, and sentence."); U.S. ex rel. Robinson v. Day, 51 F.2d 1022, 1022-23 (2d Cir. 1931) (L. Hand, J.) ("Neither the immigration officials, nor we, may consider the circumstances under which the crime was in fact committed.  When by its definition it does not necessarily involve moral turpitude, the alien cannot be deported because in the particular instance his conduct was immoral.").

moral turpitude. In U.S. ex rel. McKenzie v. Savoretti, 200 F.2d 546, 548 (5th Cir. 1952),[5] the former Fifth Circuit held that "Immigration officials and courts sitting in review of their actions need only look to the record and the inherent nature of the offense" to determine whether previous convictions were for crimes involving moral turpitude. Similarly, in Itani v. Ashcroft, 298 F.3d 1213, 1215-16 (11th Cir. 2002), we examined the statutory definition of the offense of misprision of a felony to determine that it was a crime involving moral turpitude, holding that "[w]hether a crime involves the depravity or fraud necessary to be one of moral turpitude depends upon the inherent nature of the offense, as defined in the relevant statute, rather than the circumstances surrounding a defendant's particular conduct." Likewise, in Garcia v. U.S. Attorney General, 329 F.3d 1217, 1222 (11th Cir. 2003), relying on Itani, we focused on the statutory elements of the crime of aggravated child abuse to determine that it was a crime involving moral turpitude. Also, in Vuksanovic v. U.S. Attorney General, 439 F.3d 1308, 1311 (11th Cir. 2006), we refused to look beyond the statutory definition of arson to determine that it was a crime involving moral turpitude, holding that "the determination that a crime involves moral turpitude is made categorically based on the statutory definition or nature of the crime, not the specific conduct predicating a particular

_____

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

conviction." And in <u>Sosa-Martinez v. U.S. Attorney General</u>, 420 F.3d 1338, 1342 (11th Cir. 2005), we determined, "without reference to the facts underlying [the petioner's] conviction," that a conviction of aggravated battery was a conviction of a crime involving moral turpitude. The vast majority of courts of appeals agree with us that Congress intended for the categorical or modified categorical approach to be used to determine whether convictions were convictions of crimes involving moral turpitude. See, e.g., <u>Aguilera-Enriquez v. INS</u>, 516 F.2d 565, 570 (6th Cir. 1975); <u>Wadman v. INS</u>, 329 F.2d 812, 814 (9th Cir. 1964); <u>Tillinghast v. Edmead</u>, 31 F.2d 81, 84 (1st Cir. 1929); <u>but</u> <u>see</u> <u>Ali v. Mukasey</u>, 521 F.3d 737, 743 (7th Cir. 2008).

This considerable level of agreement, spanning several decades and across various amendments to the national immigration law, is significant, because "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." <u>Lorillard v. Pons</u>, 434 U.S. 575, 580 (1978). Thus, when Congress incorporated the language premising inadmissibility on whether a person was "convicted" of a crime involving moral turpitude into the INA, it was presumably aware that this language had been interpreted to require the application of a categorical and modified categorical approach. Had there been congressional disagreement with the courts' interpretation of the word "conviction," Congress

11

could easily have removed the term "convicted" from § 212(a)(2)(A)(i)(I) of the INA during any one of the forty times the statute has been amended since 1952. See 8 U.S.C. § 1182 (historical notes). In other words, if Congress believed that the courts and the BIA had misinterpreted its intent, it could easily have amended the statute to allow adjudicators to consider the actual conduct underlying a conviction.

The government argues that § 212(a)(2)(A)(i)(I) of the INA is ambiguous because Congress's use of the words "committed" and "committing" in the parts of § 212(a)(2)(A)(i)(I) dealing with admissions imply a particularized inquiry into a person's specific conduct, thereby creating an ambiguity. But we cannot see how language used in the parts of the statute addressing admissions could create an ambiguity as to whether the categorical approach applies when a person's inadmissibility turns, as it does here, on a prior conviction. In any event, the government neither argued nor presented any proof before the IJ and the BIA that Sanchez Fajardo was removable under the admissions prongs of § 212(a)(2)(A)(i)(I).[6]

---

[6] Even when the government relies on a person's admissions to prove inadmissibility, the BIA has not historically permitted a particularized inquiry into the admitted conduct to determine whether it involved moral turpitude. Rather, the BIA requires that:

> First, the admitted conduct must constitute the essential elements of a crime in the jurisdiction where it occurred. Second, the applicant for admission must have been provided with the definition and essential elements of the crime prior to his

12

We also see no merit to the government's argument that § 212(a)(2)(A)(i)(I) of the INA is ambiguous because the word "involving" in the phrase "crime involving moral turpitude" could invite an inquiry into whether a person's particular acts underlying a conviction involved moral turpitude. As the Third Circuit recently explained in Jean-Louis v. Attorney General, 582 F.3d 462 (3d Cir. 2009), this interpretation "overlooks a crucial fact: crime involving moral turpitude is a term of art, predating even the immigration statute itself[,] . . . . [which] refers to a specific class of offenses, not to all conduct that happens to 'involve' moral depravity, because of an alien's specific acts in a particular case." Id. at 477; see Jordan v. De George, 341 U.S. 223, 227 n.9 (1951) (recognizing that "the words 'moral turpitude' had a positive and fixed meaning at common law") (internal quotation marks omitted). "Where words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary." Lorillard, 434 U.S. at 583 (alteration and quotation marks omitted). There is no indication that Congress used the word "involving" in § 212(a)(2)(A)(i)(I) of the INA for any reason other than the fact that it is part of the

---

admission. Third, his admission must have been voluntary.

See Pazcoguin v. Radcliffe, 292 F.3d 1209, 1215-16 (9th Cir. 2002) (citing Matter of K, 7 I. & N. Dec. 594, 598 (BIA 1957)).

13

term of art "crime involving moral turpitude."[7]  Thus, its inclusion in the statute

creates no ambiguity.

For the foregoing reasons, we agree with the Third and Eighth Circuits that

Congress unambiguously intended adjudicators to use the categorical and modified

categorical approach to determine whether a person was convicted of a crime

involving moral turpitude.[8]  Jean-Louis, 582 F.3d at 473; Guardado-Garcia v.

Holder, 615 F.3d 900, 902 (8th Cir. 2010).  As the Third Circuit explained, the

"ambiguity that the Attorney General perceives in the INA is an ambiguity of his

own making, not grounded in the text of the statute," and thus, "we are not bound

by the Attorney General's view because it is bottomed on an impermissible reading

---

[7] This fact renders Nijhawan v. Holder, 557 U.S. ___, 129 S. Ct. 2294 (2009), inapplicable.  In that case, the Supreme Court construed 8 U.S.C. § 1227(a)(2)(A)(iii), which provides that any "alien who is convicted of an aggravated felony at any time after admission is deportable," and § 1101(a)(43)(M)(i), which defines "aggravated felony" as "an offense that . . . involves fraud or deceit in which the loss to the victim or victims exceeds $10,000."  See Nijhawan, 129 S. Ct. at 2297.  The Court held that, to determine if a conviction was for a crime exceeding the $10,000 threshold, adjudicators must use a circumstance-specific approach, which "look[s] to the facts and circumstances underlying an offender's conviction."  Id. at 2299.  The Court based its conclusion on the text and structure of § 1101(a)(43), which is unlike the statute at issue here, § 1182(a)(2)(A)(i)(I); whereas § 1182(a)(2)(A)(i)(I) uses a well-established, generic term of art ("crime involving moral turpitude"), § 1101(a)(43) "lists certain other 'offenses' using language that almost certainly does not refer to generic crimes but refers to specific circumstances," Nijhawan, 129 S. Ct. at 2300.  Because the provisions at issue in Nijhawan are far different from the provision at issue here, the Supreme Court's rejection of the categorical approach as to §§ 1101(a)(43) and 1227(a)(2)(A)(iii) does not apply to our construction of § 1182(a)(2)(A)(i)(I).

[8] In Silva-Trevino, the Attorney General also makes several policy arguments to justify abandoning the categorical approach.  Yet because Congress has clearly spoken on this precise issue, the Department of Justice "is not free to disregard Congress's judgment, merely because it believes that it has fashioned a better alternative, or that Congress's approach is ill-advised." Jean-Louis, 582 F.3d at 480 n.22 (citing Chevron, 467 U.S. at 842-43).

of the statute, which, we believe, speaks with the requisite clarity." <u>Jean-Louis</u>,

582 F.3d at 473.[9]

Accordingly, we hold that the BIA and the IJ erred by considering evidence

beyond the record of Sanchez Fajardo's false imprisonment conviction to

determine that he had been convicted of a crime involving moral turpitude.

However, because the BIA and the IJ assumed without deciding that the Florida

offense of false imprisonment was not categorically a crime involving moral

turpitude, we must remand to the BIA to determine in the first instance whether

Sanchez Fajardo's false imprisonment conviction qualifies as a conviction of a

crime involving moral turpitude.  Thus, we GRANT Sanchez Fajardo's petition,

and REMAND for further proceedings consistent with this opinion.

**PETITION GRANTED AND REMANDED.**

---

[9] Because we hold that <u>Silva-Trevino</u> is contrary to the unambiguously expressed intent of Congress, we do not address Sanchez Fajardo's argument that the <u>Silva-Trevino</u> approach violates the due process rights of respondents by requiring them to litigate complex factual issues related to prior convictions in removal proceedings.