Petition granted; vacated and final judgment by published opinion. Judge KEENAN wrote the opinion, in which Chief Judge TRAXLER joined. Judge SHEDD wrote a dissenting opinion.
OPINION
BARBARA MILANO KEENAN, Circuit Judge:
Ricardo A. Prudencio is a native and citizen of El Salvador who has been granted lawful permanent resident alien status in the United States. He petitions this Court for review of a decision of the Board of Immigration Appeals (the Board), in which the Board dismissed his appeal from an immigration judge’s decision classifying him as an alien subject to removal under section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1227(a)(2)(A)(i).
*476 The order of removal was based on the immigration judge’s determination that Prudencio previously had been convicted of a crime involving moral turpitude. In making this determination, the immigration judge considered information obtained using the three-step procedural framework established by the Attorney General in Matter of Silva-Trevino, 24 I. & N. Dec. 687 (A.G.2008). Because we conclude that the moral turpitude provisions of the INA are not ambiguous and do not contain any gap requiring agency clarification, we hold that the procedural framework- established in Silvar-Trevino was not an authorized exercise of the Attorney General’s authority under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Accordingly, we grant Prudencio’s petition and vacate the Board’s decision and the order providing for Prudencio’s removal.
I.
Before the decision in Silva-Trevino, the majority of our sister circuits applied the categorical and modified categorical approaches set forth in Taylor v. United States, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and Shepard v. United States, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), in determining whether an alien’s prior conviction qualified as a crime involving moral turpitude under the INA. The Attorney General purported to alter application of these traditional approaches in Silva-Trevino. Primarily, the Attorney General concluded that if, after application of the categorical and modified categorical approaches, an alien’s record of conviction still is inconclusive, immigration judges should engage in an additional third step of analysis and “consider any additional evidence the adjudicator determines is necessary or appropriate” to resolve whether the alien was convicted of a crime involving moral turpitude. 24 I. & N. Dec. at 704.
II.
Prudencio was accorded lawful permanent resident alien status in September 2005. In October 2009, he was charged in Prince William County, Virginia, with a violation of Virginia Code § 18.2-63 for the carnal knowledge, without the use of force, of a 13-year-old child (the carnal knowledge statute). In March 2010, in the Prince William County Juvenile and Domestic Relations District Court, Prudencio pleaded guilty to the amended charge of contributing to the delinquency of a minor (the 2010 conviction), in violation of Virginia Code § 18.2-371 (the delinquency statute), a misdemeanor. He received a sentence of 12 months’ incarceration with six months suspended.
In June 2010, the Department of Homeland Security (DHS) initiated removal proceedings against Prudencio under 8 U.S.C. § 1227(a)(2)(A)®.[1] DHS argued that Prudencio was subject to removal because, within five years of his admission into the United States, he had been convicted of a crime involving moral turpitude for which a sentence of one year or longer could have been imposed. DHS based its action on Prudencio’s conviction under the delinquency statute, which provides in relevant part:
Any person 18 years of age or older, including the parent of any child, who (i) willfully contributes to, encourages, or causes any act, omission, or condition *477 which renders a child delinquent, in need of services, in need of supervision, or abused or neglected as defined in § 16.1-228, or (ii) engages in consensual sexual intercourse with a child 15 or older not his spouse, child, or grandchild, shall be guilty of a Class 1 misdemeanor.
Va.Code § 18.2-371.
In considering DHS’s request for removal, the immigration judge used the three-step procedural framework established by the Attorney General in Silva-Trevino. Under this procedural framework, the immigration judge first applied the categorical approach approved in Taylor and Shepard to determine if every conviction under the delinquency statute inherently involved moral turpitude. Because he concluded that the statute was divisible, encompassing some crimes that involve moral turpitude and others that do not, the immigration judge proceeded to the second step of the Silvar-Trevino framework, under which he applied the modified categorical approach articulated in Taylor and Shepard and reviewed Prudeneio’s record of conviction. Upon determining that the record of conviction was inconclusive, the immigration judge proceeded to apply the third step of the Silva-Trevino procedural framework.
Pursuant to this third step, when the record of conviction does not establish conclusively under which portion of a divisible statute an alien was convicted, the Attorney General has authorized immigration judges to consider evidence beyond the record of conviction to the extent they deem it “necessary and appropriate.”[2] Silvar-Trevino, 24 I. & N. Dec. at 690. Applying this third step in the present case, the immigration judge reviewed the narrative report prepared by the Prince William County Police Department relating to the 2010 conviction, which indicated that Prudencio had sexual relations with a 13-year-old girl when he was over the age of 18. Based on this information, the immigration judge sustained the removal charge and ordered that Prudencio be removed to El Salvador.
Prudencio appealed the order of removability to the Board, advancing two main arguments. First, he challenged the procedural framework established in SilvarTrevino, asserting that the framework was predicated on an impermissible reading of the INA. Second, he contended that the documents reviewed by the immigration judge under the third step of the SilvarTrevino framework conclusively established that Prudencio was convicted under subsection (i) of the delinquency statute, which does not encompass crimes involving moral turpitude.
Prudencio argued that only a conviction under subsection (ii) of the delinquency statute, involving consensual sexual intercourse with a child 15 or older, qualified as a crime involving moral turpitude. Because the documents considered by the immigration judge showed that the victim was not 15 years of age or older, Prudencio asserted that he could not have been convicted under subsection (ii) of the delinquency statute and, therefore, must have been convicted under subsection (i) of that statute.
The Board rejected Prudencio’s arguments and dismissed his appeal. In reaching its decision, the Board upheld the immigration judge’s application of the three-step procedural framework established in *478 Silvar-Trevino. The Board further concluded that Prudencio did “not dispute the immigration judge’s findings of fact,” and that Prudencio had acknowledged that his initial charge under the carnal knowledge statute was based on a sexual encounter with a female minor.
III.
A.
Prudencio argues on appeal that we should not defer to the Silvar-Trevino procedural framework, but instead should limit our review to the categorical and modified categorical approaches in determining whether he was convicted of a crime involving moral turpitude. Prudencio contends that under either of these approaches, his conviction cannot be classified as a crime involving moral turpitude.
Because the Silvar-Trevino procedural framework is central to the resolution of this appeal, we begin our analysis with a review of that case. Cristoval Silva-Trevino was a native of Mexico admitted to the United States as a lawful permanent resident. Silvar-Trevino, 24 I. & N. Dec. at 690. In 2004, he entered a plea of “no contest” in a Texas state court to the felony offense of “indecency with a child,” in violation of Texas Penal Code § 21.11(a)(1). Silvar-Trevino, 24 I. & N. Dec. at 690. That statute prohibits, among other things, sexual contact with a child younger than 17 years of age by a person at least three years older who is not married to the child. Tex. Penal Code Ann. § 21.11(a)(1).
Arguing that Silva-Trevino had been convicted of an aggravated felony, DHS began removal proceedings against him the following year under 8 U.S.C. § 1227(a)(2)(A)(iii). Silva-Trevino, 24 I. & N. Dec. at 691. The immigration court determined that Silva-Trevino’s conviction was categorically a crime involving moral turpitude, rendering him ineligible for adjustment of status. Id. Therefore, the immigration court ordered his removal from the United States. Id.
The Board reversed the immigration court’s decision, concluding that under both the categorical and the modified categorical approaches, DHS had failed to establish that Silva-Trevino’s conviction qualified as a crime involving moral turpitude. Id. at 692. Although DHS did not appeal the Board’s decision, the Attorney General directed that the Board refer the case to him under 8 C.F.R. § 1003.1(h)(1)(i). The Attorney General stated that the case presented him with “an opportunity to establish a uniform framework for ensuring that the [INAj’s moral turpitude provisions are fairly and accurately applied.” Silva-Trevino, 24 I. & N. Dec. at 688.
In his decision in Silvar-Trevino, the Attorney General established a three-step procedural framework for determining whether an alien’s conviction qualifies under the INA as a crime involving moral turpitude. Id. at 704. In support of his analysis, the Attorney General observed that the various circuit courts of appeal have applied different standards in their categorical and modified categorical analyses. Id. at 693-94. Invoking section 103(a)(1) of the INA and 8 C.F.R. § 1003.1(d)(1), the Attorney General purported to establish a uniform framework for use throughout the nation for determining whether an alien’s conviction qualifies as a crime involving moral turpitude. Id. at 695-96. His stated basis for this action was his contention that the relevant sections of the INA are ambiguous, and that “administrative agencies are not bound by prior judicial interpretations of ambiguous statutory provisions.” Id. at 696 (citing National Cable & Telecomms. *479 Ass’n v. Brand X Internet Servs., 545 U.S. 967, 982, 125 S.Ct. 2688, 162 L.Ed.2d 820 (2005)).
The three-step procedural framework established by the Attorney General in Silvar-Trevino starts with a categorical approach, under which the inquiry is terminated if the statute at issue categorically either requires or excludes conduct involving moral turpitude. The Attorney General stated that if, however, there is a “realistic probability” that the statute could be •applied to encompass conduct that does not involve moral turpitude, as well as conduct that does, the inquiry must continue to a second step of analysis. Id. at 697 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)).
The second step described in Silvar-Trevino is the modified categorical approach approved by the Supreme Court in Taylor and Shepard. At this stage in the analysis, the immigration judge reviews the record of conviction to determine whether the alien’s conviction qualifies under the statute as a crime involving moral turpitude. Silva-Trevino, 24 I. & N. Dec. at 698-99. If the documents subject to review do not conclusively resolve the inquiry, the Attorney General directed that immigration judges should proceed to a third step. Id. at 699. It is the addition of this third step that deviates most significantly from the categorical and modified categorical approaches applied in this circuit and in the majority of our sister circuits.
Under the third step of the Silva-Trevino procedural framework, the Attorney General authorized immigration judges to consider evidence beyond the record of conviction “if doing so is necessary and appropriate.” Id. The Attorney General did not provide any guidance on the kind of evidence that may be considered under this third step, stating only that the immigration judge may “consider any additional evidence or fact finding” that the judge “determines is necessary or appropriate to resolve accurately the moral turpitude question.” Id. at 708.
B.
The Attorney General has based his decision to establish this three-step procedural framework on his determination that the use of the phrase “moral turpitude” in the INA is ambiguous. The text of the statute on which the Attorney General relies provides, in relevant part, that “any alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of a crime involving moral turpitude ... is inadmissible.” 8 U.S.C. § 1182(a)(2)(A)(i)(I) (the moral turpitude statute).[3]
The Attorney General opined that the statute is “silent on the precise method that immigration judges and courts should use to determine if a prior conviction is for a crime involving moral turpitude.” Silva-Trevino, 24 I. & N. Dec. at 693. He concluded that “[t]o the extent [the statute] does suggest a method, the text actually cuts in different directions.” Id. According to the Attorney General, certain language, such as the use of the word “convicted” rather than “committed” at the beginning of the statute, suggests that the inquiry should be categorical and should focus on the statutory elements required *480 for conviction, rather than on the particular facts of an individual crime. Id. He asserted that other language, however, “seems to call for, or at least allow, inquiry into the particularized facts of the crime.” Id. In support of this latter proposition, the Attorney General identified two statutory references: (1) the use of the word “involving,” and (2) the language regarding aliens who admit to “committing” certain “acts.” Id. We disagree with the Attorney General’s interpretation.
IV.
In reviewing the Attorney General’s analysis and the procedural framework established in Silvctr-Trevino, we first consider Prudencio’s argument challenging the basis for the Attorney General’s invocation of his authority. Because Prudencio opposes an agency determination reached through adjudication, we employ the analysis prescribed by the Supreme Court in Chevron. 467 U.S. 837, 104 S.Ct. 2778.
Under the Chevron analysis, we first consider whether “Congress has directly spoken to the precise question” at issue. Id. at 842, 104 S.Ct. 2778. If, using traditional tools of statutory construction, we determine that Congress manifested an intention on the precise question, such intention must be given effect and the analysis concludes. Id. at 842-43 n. 9, 104 S.Ct. 2778. When, however, the statute is ambiguous or silent with respect to the precise issue, we must proceed to decide whether the agency’s interpretation of the statute is reasonable and, thus, is entitled to deference. Id. at 843, 104 S.Ct. 2778.
We previously have accorded substantial deference to DHS’s interpretation of the statutes and regulations that the agency administers. Yousefi v. U.S. INS, 260 F.3d 318, 325 (4th Cir.2001) (per curiam). In Yousefi, we held that the Chevron framework provides the appropriate method for analyzing DHS’s determination regarding what type of conduct involves moral turpitude under the INA. Id. at 326. We observed that deference was appropriate in that circumstance because Congress did not define the phrase “crime involving moral turpitude,” instead “leaving the phrase to administrative and judicial interpretation.” Id. at 326.
We face a different question in this appeal. At issue in this case is not what conduct or statutory offense qualifies as a crime involving moral turpitude, but rather what language in the moral turpitude statute informs an adjudicator of the procedure for determining whether a particular conviction qualifies as a crime involving moral turpitude. In part of its argument, DHS conflates these concepts and relies on the asserted ambiguity inherent in the phrase “crime involving moral turpitude” to justify deference to the Attorney General’s three-step procedural framework.
These two concepts, however, require distinct inquiries. In answering the question before us, whether the moral turpitude statute provides direction concerning the process for determining whether a particular conviction qualifies as a crime involving moral turpitude, we are guided by the Chevron analysis.
A.
Under the Chevron analysis, we consider the language of the moral turpitude statute to resolve whether the statutory language is ambiguous or silent regarding the appropriate procedure for determining whether a particular conviction involves moral turpitude. See Chevron, 467 U.S. at 843, 104 S.Ct. 2778. In making this assessment, we consider the statute’s plain language. Id. at 843 n. 9, 104 S.Ct. 2778.
The moral turpitude statute provides, in material part, that:
*481 Except as provided in clause (ii), any alien convicted of, or who admits having committed or who admits committing acts which constitute the essential elements of—
(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime ...
is inadmissible.
8 U.S.C. § 1182(a)(2)(A)(i)(I).
This language in the moral turpitude statute includes three distinct provisions that are relevant here. First, under the statute, any alien who is convicted of a crime involving moral turpitude is inadmissible. Second, the statute precludes the admission of any alien who has admitted having committed a crime involving moral turpitude. Third, the statute bars admission of any alien who has admitted committing acts that satisfy the essential elements of a crime involving moral turpitude.
These three provisions fall into two separate categories, namely, a category involving convictions and a category involving admissions. The statutory language addressing convictions is found exclusively in the first part of the moral turpitude statute. This first portion of the statute is the one at issue in this case, and was central to the decision in Silva-Trevino.
In contrast, the statutory category referring to admissions is found in the second and third provisions of the statute, and addresses only acts that an alien has admitted committing. The language regarding “committing acts,” relied on by the Attorney General, only appears within this portion of the statute addressing admissions, and not the part of the statute addressing convictions. Because there are no admissions at issue in the present case, and likewise were none at issue in SilvarTrevino, the Attorney General’s reliance on the words “committing acts” in support of his finding of statutory ambiguity is misplaced.
We also disagree with the Attorney General’s analysis of the word “involving.” In Silvar-Trevino, the Attorney General interpreted the word in isolation, relying on the dissent in Marciano v. INS, which unsuccessfully argued that adjudicators should determine whether “moral turpitude was in fact involved” in reviewing prior convictions. Silva-Trevino, 24 I. & N. Dec. at 693 (quoting Marciano v. INS, 450 F.2d 1022, 1028 (8th Cir.1971) (Eisele, J., dissenting)) (emphasis added). The Attorney General asserted that, viewed in this context, the word “involving” allows for an inquiry into the particular facts underlying a conviction. See Silva-Trevino, 24 I. & N. Dec. at 693. However, both the context in which this word is used and the structure of the statute refute the Attorney General’s interpretation.
The word “involving” must be considered in its statutory context. As set forth in the statute, the participle “involving” cannot be divorced from the unitary phrase “crime involving moral turpitude,” which is a term of art that has been used for over one hundred years and predates the INA. See Jean-Louis v. Attorney General, 582 F.3d 462, 477 (3d Cir.2009) (citing Jordan v. De George, 341 U.S. 223, 227, 71 S.Ct. 703, 95 L.Ed. 886 (1951) and Baxter v. Mohr, 37 Misc. 833, 76 N.Y.S. 982 (1902)). As the Third Circuit noted in Jean-Louis, the use of the term “involving” in the phrase “crime involving moral turpitude” is no more expansive than use of the word “of’ in the term “crime of violence.” Id. at 478.
This unitary understanding of the phrase “crime involving moral turpitude” is supported by another part of the moral turpitude statute. While the third provision in the statute referring to admissions *482 is not directly applicable to the resolution of this case, its construction illuminates the cohesive nature of the phrase “crime involving moral turpitude.” That provision states that “any alien ... who admits committing acts which constitute the essential elements of a crime involving moral turpitude ... is inadmissible.” 8 U.S.C. § 1182(a)(2)(A)(i)(I). This syntax demonstrates that the focus of the statutory inquiry in this case is not the acts of moral turpitude themselves, but the admissions establishing the essential elements of a particular type of crime, in this case, a crime involving moral turpitude. Therefore, this statutory language reinforces the conclusion that the focus of the inquiry directed by the statute is the alien’s actual conviction, not the conduct underlying that conviction.
We also consider Congress’ use of the word “conviction” in the moral turpitude statute. The meaning of the word does not change when used in an immigration statute, as opposed to its customary application in criminal statutes. To assign a different statutory meaning to the word “conviction” in the isolated context of crimes involving moral turpitude, and only within the realm of the INA, as the Attorney General proposes in Silva-Trevino, 24 I. & N. Dec. at 704, thus lacks both logic and statutory support.
Based on these considerations, we conclude that the plain language of the moral turpitude statute is not ambiguous. Because the relevant statutory language refers only to convictions, not to conduct or to “committing” acts, there is no uncertainty in the statutory language created by the use of the phrase “convicted of’ in the same statute as the words “committing” and “involving.” Thus, in a case such as the present one in which the only issue is the alien’s prior conviction, the statute unambiguously directs that an adjudicator consider only the conviction itself, and not any underlying conduct.
B.
Because the moral turpitude statute is not ambiguous, DHS is authorized under Chevron to fill a gap in the statutory scheme only if the statute is silent regarding the process for determining whether a particular conviction qualifies as a crime involving moral turpitude. See Chevron, 467 U.S. at 843, 104 S.Ct. 2778; Nat’l City Bank v. Turnbaugh, 463 F.3d 325, 332 (4th Cir.2006). DHS argues that such a gap exists because neither the INA generally, nor the moral turpitude statute in particular, prescribes the methodology by which an adjudicator determines whether a crime qualifies as a crime involving moral turpitude.
Contending that there is a gap in this aspect of the statutory language, DHS observes that the term “moral turpitude” will not arise in an alien’s record of conviction because the phrase is not a statutory element of any state or federal crime. Therefore, DHS asserts, a circumstance-specific inquiry is permissible under the INA. Further, in an attempt to distinguish the Supreme Court’s decisions in Taylor and Shepard, DHS emphasizes that these cases were decided in the context of criminal statutes and thus are not binding in interpreting the INA. We address these arguments in turn.
Although DHS is correct that the term “moral, turpitude” is not usually an element of an offense and thus will not appear literally in the record of conviction, courts nevertheless have been able to interpret this phrase for over a century, and a robust body of law has developed in this regard. Moreover, DHS retains the authority to classify various types of offenses as “crimes involving moral turpitude,” rendering fact-specific inquiries into individual *483 violations unnecessary. See Yousefi, 260 F.3d at 326. And, plainly, prosecutors retain the ability to highlight aspects of moral turpitude present in individual offenses by ensuring that these aspects appear in the record of conviction in the content of plea colloquies, in explicit factual findings made by the trial judge, or in jury instructions given in the underlying criminal cases. See Shepard, 544 U.S. at 15, 125 S.Ct. 1254; Taylor, 495 U.S. at 602, 110 S.Ct. 2143.
Our conclusion is not altered by DHS’s argument that the Supreme Court’s holding in Nijhawan v. Holder, 557 U.S. 29, 129 S.Ct. 2294, 174 L.Ed.2d 22 (2009), decided after the decision in Silva-Trevino, supports the use of a circumstance-specific analysis in applying the INA. DHS broadly asserts that the holding in Nijhawan permits an adjudicator to consider facts outside the record of conviction when considering statutory criteria that are not characteristically an element of an offense. In Nijhawan, an alien faced removal for his conviction of an aggravated offense “that ... involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.” Id. at 2297 (emphasis in original) (quoting 8 U.S.C. § 1101(a)(43)(M)(i)). The Court noted that this language does not refer to an element of the fraud or deceit crime but “to the particular circumstances in which an offender committed” this type of crime “on a particular occasion.” Id. at 2298. DHS bases its argument on this specific language.
We disagree that the quoted language in Nijhawan permits an unrestricted circumstance-specific inquiry in the absence of express guidance from Congress. In 8 U.S.C. § 1101(a)(43)(M)(i), Congress modified the generic crime of “fraud or deceit” with a qualifying phrase that requires a fact-specific review. No analogous command exists in the moral turpitude statute in the INA. The phrase “crime involving moral turpitude” is not modified by any other statutory directive. Therefore, DHS’s entreaty that we consider mere factual allegations made in the underlying criminal case cannot be reconciled with the statutory directives established by Congress in the INA.
In addition to the fact that there is no statutory support in the INA for expanding the reach of Nijhawan, practical considerations also demonstrate its inapplicability. As noted above, the phrase “crime involving moral turpitude” is a term of art in a way that “offense ... in which the loss to the victim or victims exceeds $10,000” is not. The contours of the phrase “crime involving moral turpitude” have been developed over a long history of judicial interpretation, while the phrase a “loss [that] exceeds $10,000” is an objective criterion that requires no interpretation whatsoever. Thus, an inquiry whether a loss exceeds $10,000 involves only the inspection of a single threshold fact, but a determination whether a particular conviction was for a crime involving moral turpitude often could require evaluation of all the evidence in an underlying criminal case by an adjudicator wholly unfamiliar with those proceedings.
Such an unbridled evaluation poses very real evidentiary concerns. The third step of the Silva-Trevino framework allows an immigration judge to rely on documents of questionable veracity as “proof’ of an alien’s conduct. These documents, such as police reports and warrant applications, often contain little more than unsworn witness statements and initial impressions. Indeed, these materials are designed only to permit a determination of probable cause. Further, because these submissions are generated early in an investigation, they do not account for later events, such as witness recantations, *484 amendments, or corrections. To confer upon such materials the imprimatur of fact, even for the narrow application of removal proceedings involving questions of moral turpitude, accords these documents unwarranted validity.
Although DHS correctly observes that immigration removal proceedings are civil, rather than criminal, in nature, this difference does not affect the risks inherent in considering facts only alleged, but not necessarily proved, in the underlying criminal proceedings. As the Supreme Court has emphasized repeatedly, “the practical difficulties and potential unfairness of a factual approach are daunting.” Shepard, 544 U.S. at 20, 125 S.Ct. 1254; Taylor, 495 U.S. at 601, 110 S.Ct. 2143. Therefore, we decline to sanction such a factual approach here.
Based on these considerations, we conclude that the moral turpitude statute is neither ambiguous nor silent, but explicitly directs that apart from certain types of admissions made by a defendant at his criminal proceedings, an adjudicator applying the moral turpitude statute may consider only the alien’s prior conviction and not the conduct underlying that conviction. Thus, under the Chevron analysis, we do not defer to the Attorney General’s establishment of a three-step procedural framework for determining whether a particular conviction is for a crime involving moral turpitude.
We observe that our rejection of the Silvar-Trevino framework is in accord with decisions of three of our sister circuits. In Jean-Louis, the Third Circuit engaged in an extensive analysis of the Attorney General’s decision, concluding that the moral turpitude statute was not ambiguous. 582 F.3d 462. In a more abbreviated review, the Eighth Circuit declined an alien’s entreaty to employ Silva-Trevino’s third step and held that the Attorney General’s decision was not entitled to deference. Guardado-Garcia v. Holder, 615 F.3d 900, 902 (8th Cir.2010). Most recently, the Eleventh Circuit rejected the Silva-Trevino framework after employing an analysis similar to the one we have applied here. See Fajardo v. U.S. Attorney General, 659 F.3d 1303 (11th Cir.2011). In Fajardo, the Eleventh Circuit concluded that DHS’s interpretation of the moral turpitude statute was not entitled to deference under Chevron because the term “conviction” is unambiguous. Id.
Upon our rejection of the Silva-Trevino framework, we apply the analysis developed in Taylor and Shepard. Accordingly, we proceed to consider the present record guided by those decisions.
V.
A.
To determine whether Prudencio’s conviction was for a crime involving moral turpitude, we first apply the categorical approach. This approach is mandated by Congress’ choice to define the condition of deportation in terms of “convictions,” rather than “conduct.” See Taylor, 495 U.S. at 600-01, 110 S.Ct. 2143. This analysis requires that we examine the statutory elements of the crime, and not consider the facts or conduct of the particular violation at issue. See Yousefi, 260 F.3d at 326 (citing Castle v. INS, 541 F.2d 1064, 1066 (4th Cir.1976) (per curiam)).
In employing these approaches for purposes of the INA, we accord the Attorney General deference regarding the determination of what type of conduct involves moral turpitude. Yousefi, 260 F.3d at 326. The Attorney General has directed that, generally, a crime involves moral turpitude if it is “inherently base, vile, or depraved and contrary to accepted rules of morality and the duties owed between per *485 sons or to society in general.” Matter of Olquin-Rufino, 23 I. & N. Dec. 896, 896 (B.I.A.2006).
The delinquency statute, as we have observed, consists of two subsections. Subsection (i) punishes “[a]ny person 18 years of age or older ... who willfully contributes to, encourages, or causes any act, omission, or condition which renders a child delinquent, in need of services, in need of supervision, or abused or neglected....” Va.Code § 18.2-371. As DHS acknowledges, this subsection encompasses various behaviors, such as the inducement of a minor to commit the misdemeanor crime of trespassing, see Hubbard v. Commonwealth, 207 Va. 673, 152 S.E.2d 250, 253 (1967), which do not qualify as crimes involving moral turpitude.
Subsection (ii) of the delinquency statute, however, criminalizes conduct of a different nature. That subsection punishes any person 18 years of age or older who “engages in consensual sexual intercourse with a child 15 or older not his spouse, child, or grandchild.” Va.Code § 18.2-371.
The Attorney General has concluded that for purposes of applying the INA, “any intentional sexual contact by an adult with a child involves moral turpitude.” Silva-Trevino, 24 I. & N. Dec. at 705 (emphasis in original); see also Castle, 541 F.2d at 1066 (“It is well established that the Maryland statutory offense of carnal knowledge of a female between the ages of fourteen and sixteen years manifestly involves moral turpitude.”) (quotation marks omitted). Based on this determination by the Attorney General regarding the scope of conduct constituting a crime of moral turpitude under the INA, we hold that a conviction under subsection (ii) of the delinquency statute constitutes a conviction of a crime involving moral turpitude. See Yousefi, 260 F.3d at 326. However, because the delinquency statute also encompasses behaviors that do not qualify as crimes involving moral turpitude, the categorical approach does not resolve our inquiry, and we proceed under the modified categorical approach to consider further whether Prudencio was convicted of a crime involving moral turpitude. See Shepard, 544 U.S. at 17, 125 S.Ct. 1254.
B.
Under the modified categorical approach, we review the record of conviction to determine whether the crime of which Prudencio was convicted qualifies as a crime involving moral turpitude. See Taylor, 495 U.S. at 602,110 S.Ct. 2143. In cases such as the one before us, in which the conviction at issue was based on a guilty plea, the record of conviction is composed of the charging document, the plea agreement, the plea colloquy, and any explicit findings of fact made by the trial judge. Shepard, 544 U.S. at 15, 125 S.Ct. 1254.
Prudencio pleaded guilty to the amended charge of contributing to the delinquency of a minor, in violation of the delinquency statute. The record of conviction does not contain a plea colloquy or findings of fact by the trial judge, but consists only of a single form entitled “Warrant of Arrest — Felony.” Although this warrant originally charged a violation of the carnal knowledge statute, the warrant later was amended to charge a violation of the delinquency statute, and a handwritten entry on the face of the document shows that Prudencio pleaded guilty to the amended charge. However, no other entry on the warrant, the sole document before us in the record of conviction, provides any information showing under which subsection of the delinquency statute Prudencio was convicted.
*486 Although the police report indicated that Prudencio engaged in consensual sexual intercourse with a minor, that report may not be considered as part of the record of conviction. See Shepard, 544 U.S. at 20-23, 125 S.Ct. 1254. Further, the arrest warrant originally alleged a violation to which Prudencio did not plead guilty. Thus, Prudencio did not admit to any facts apart from the amended charge stated in the arrest warrant, and any other factual allegations cannot be attributed to him. See United States v. Alston, 611 F.3d 219, 227 (4th Cir.2010).
We find no merit in DHS’s contention that Prudencio has conceded that he was convicted of a crime involving moral turpitude, because he did not dispute the immigration judge’s findings of fact and acknowledged that he initially was charged with carnal knowledge of a child 13 years of age. The findings of fact made by the immigration judge may not be considered under the modified categorical approach, because those findings were not part of Prudencio’s record of conviction but were derived solely from information acquired under the third step of the Silva-Trevino procedural framework.
Prudencio’s original charge likewise is irrelevant. The original charge on the warrant alleging a violation of the carnal knowledge statute was superseded once the warrant was amended to charge a violation of the delinquency statute. Thus, Prudencio’s acknowledgement before the Board of the nature of his original charge does not constitute an admission of any particular conduct.
VI.
In conclusion, we hold that DHS has not satisfied its burden of showing that Prudencio’s 2010 conviction qualified as a crime involving moral turpitude. We therefore grant the alien’s petition, vacate the immigration judge’s order of removal, and enter final judgment in favor of Prudencio.

PETITION GRANTED; VACATED AND FINAL JUDGMENT

. DHS asserted two other bases for removal, which DHS later withdrew. Additionally, DHS charged Prudencio with a violation of section 237(a)(2)(E)(i) of the INA, which the immigration judge declined to address. However, the alleged violation of section 237(a)(2)(E)© is not before us, because DHS has not filed a cross-appeal.

. The Attorney General used the phrase “necessary and appropriate” twice in outlining his procedural framework. Silva-Trevino, 24 I. & N. Dec. at 690, 699 (emphasis added). However, in summarizing the framework twice and in employing it in the case itself, he used the phrase “necessary or appropriate.” Id. at 687, 704, 708 (emphasis added).

. Both this case and Silva-Trevino involve 8 U.S.C. § 1227(a)(2)(A)(i), which employs the phrase “crime involving moral turpitude.” However, a greater understanding of that phrase comes from its use in 8 U.S.C. § 1182(a)(2)(A)(i)(I). Accordingly, we will conduct our analysis based on this latter statute, as the Attorney General does in Silva-Trevino.